IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BLAKE ROGERS, *et al.*, | ) | CIVIL ACTION NO. 1:20-CV-02568 |
| | ) | |
| Plaintiffs, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | **PLAINTIFFS' BRIEF IN** |
| | ) | **OPPOSITION TO DEFENDANTS'** |
| MARTIN HORWITZ, *et al.*, | ) | **DECEMBER 15, 2020 PARTIAL** |
| | ) | **MOTION FOR JUDGMENT ON** |
| Defendants. | ) | **THE PLEADINGS** |

Plaintiffs Blake and Jacalyn Rogers, by and through undersigned counsel, hereby respectfully request that the Court deny the Defendants' December 15, 2020 Partial Motion for Judgment on the Pleadings.

## I.     LAW AND ARGUMENT

**A.     Individual-Capacity Suits Under the Family and Medical Leave Act of 1993.**

In spite of the Defendants' contentions to the contrary, the law governing whether a public-sector employee can be held individually liable for FMLA violations is neither well-settled nor conclusive; in fact, the issue of "individual public employee liability is a subject of much debate among the courts of appeals." *Modica v. Taylor*, 465 F.3d 174, 188 (5th Cir. 2006). And while the Sixth Circuit did in fact pass judgment on this issue in *Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cit. 2003), finding "that the FMLA's individual liability provision does not extend to public agencies," the holding of *Mitchell* is not as firm of a legal bedrock as the Defendants would hope it to be. Instead, the *Mitchell* opinion places the Sixth Circuit in the overwhelming *minority* of Circuits to have decided the

1

issue, seemingly joined only by the Eleventh Circuit in *Wascura v. Carver*, 169 F.3d 683 (11th Cir. 1999).

In stark contrast, the Second, Third, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits have all concluded beyond doubt that individual public employees may be held liable for violating the Family and Medical Leave Act of 1993. *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193 (D. Conn. 2012); *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448 (S.D.N.Y. 2011); *Dennard v. Towson Univ.*, 62 F. Supp. 3d 446 (D. Md. 2014); *Sheaffer v. Cty. of Chatham*, 337 F. Supp. 2d 709 (M.D.N.C. 2004); *Corbett v. Richmond Metro. Transportation Auth.*, 203 F. Supp. 3d 699 (E.D. Va. 2016); *Weth v. O'Leary*, 796 F. Supp. 2d 766 (E.D. Va. 2011); *Bellow v. LeBlanc*, 550 F. App'x 181 (5th Cir. 2013); *Law v. Hunt Cty., Texas*, 830 F. Supp. 2d 211 (N.D. Tex. 2011); *Cooley v. Bd. of Educ. of the City of Chicago*, 703 F. Supp. 2d 772 (N.D. Ill. 2009); *Rasic v. City of Northlake*, 563 F. Supp. 2d 885 (N.D. Ill. 2008); *Morrow v. Putnam*, 142 F. Supp. 2d 1271 (D. Nev. 2001).

And there is even evidence of dissonance within the courts of the Sixth Circuit that implicate the continued validity of *Mitchell* and its progeny. *Mueller v. J.P. Morgan Chase & Co.*, No. 1:05-CV-560, 2007 WL 915160, at *22 (N.D. Ohio Mar. 23, 2007) (casting doubt on *Mitchell* and the marked absence of Sixth Circuit or Ohio cases explaining or supporting its contentions); *Pozsgai v. Ravenna City Sch. Bd. of Educ.*, No. 5:10-CV-02228, 2012 WL 1110013, at *9 n.6 (N.D. Ohio Mar. 30, 2012) (finding that the plaintiff simply failed to make out a *prima facie* case; individual defendant's public-sector status was not part of analysis and was only briefly mentioned in a footnote).

The logic behind this result is simple, straightforward, and sensible, as "the plain language of the statute decides this question" affirmatively in favor of holding individual public sector employees accountable for their unlawful behavior. *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002). In *Darby*, the Eighth Circuit plainly explained their reasoning for reaching such a conclusion as follows:

> Employer is defined as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer[.]" 29 U.S.C. § 2611(4)(A)(ii)(I). This language plainly includes persons other than the employer itself. **We see no reason to distinguish employers in the public sector from those in the private sector.** See [*Morrow v. Putnam*], 142 F. Supp. 2d at 1275 (stating that opinions which hold public officials are not subject to individual liability "do not explain why public officials should be exempted from liability while managers in the private sector are not."). **If an individual meets the definition of employer as defined by the FMLA, then that person should be subject to liability in his individual capacity.**

*Id.* at 681 (emphasis added). Without individual liability, public employees will not be deterred from violating the rights of expecting families, the sick and the injured, and those who act as caregivers for ill family members.

But perhaps the most thorough and well-measured judicial rebuke of *Mitchell* is the Fifth Circuit's opinion in *Modica v. Taylor*, 465 F.3d 174, 183–87 (5th Cir. 2006). In *Modica*, the Fifth Circuit dissected the *Mitchell* opinion line by line, pinpointing the various inconsistencies and overly laborious leaps undertaken by the Sixth Circuit in drawing an arbitrary line between individual public and private employees. In so doing, the Fifth Circuit wrote: "Contrary to the *Mitchell* court's reasoning, Section 2611(4)(B) is not superfluous under this reading, it relieves plaintiffs of the burden of proving that a public agency is engaged in commerce. *See Hewett*, 421 F.Supp.2d at 820. The most

3

straight forward reading of the text compels the conclusion that a public employee may be held individually liable under the FMLA." *Id.* at 186.

Indeed, the Fifth Circuit is not alone in rebuking *Mitchell*, finding support from the District Court of New Jersey that the Sixth Circuit's textual analysis is inherently flawed. *Hewett v. Willingboro Bd. of Educ.*, 421 F.Supp.2d 814, 819 (D.N.J. 2006) ("In any event, in light of Section 2611(4)(A)'s use of the inclusive term 'and' linking clauses (i)-(iv), the Court does not agree with *Mitchell*, 343 F.3d at 829–30, that Congress intended those provisions to be mutually exclusive.").

The combined import of the foregoing cases indicates that Horwitz and Haba not only can but *should* potentially be liable to Blake for their unlawful violations of the Family and Medical Leave Act of 1993. And in any event, the state of the law is such that this split of authority among the Circuits should be seriously examined by the Court. The continued validity of *Mitchell* should be challenged and analyzed in order to bring the Sixth Circuit's jurisprudence into harmony with its sister Circuits.

**B.      Equal Protection Claim Against Horwitz.**

In an abundance of caution, and to ensure that the Plaintiffs' claims are decided on their merits rather than by an alleged pleading deficiency, the Plaintiffs have filed an Amended Complaint which addresses the issues raised in the Defendants' Motion. The Plaintiffs respectfully refer the Court to the Amended Complaint. (ECF No. 12, PageID ## 171–77; Am. Comp. at ¶¶ 183–235.)

**C.     Establishing the Existence of a Disability through Pleadings.**

In an abundance of caution, and to ensure that the Plaintiffs' claims are decided on their merits rather than by an alleged pleading deficiency, the Plaintiffs have filed an Amended Complaint which addresses the issues raised in the Defendants' Motion; namely, that Blake has not suffered a disability contemplated by law. To wit, the Plaintiffs have alleged as follows:

> 249.   Because of the injury to his leg, the Ohio Industrial Commission declared that Plaintiff Rogers has a permanent partial disability.
>
> 250.   Because of the injury to his leg, Plaintiff Rogers cannot walk, run, kneel, carry or lift objects, play with or care for his children, or assist or care for his wife; and when he tries to do any of these major life activities, Plaintiff Rogers experiences severe pain.
>
> 251.   Plaintiff Rogers has been prescribed several medications to treat the symptoms of his PTSD, which includes hyper-vigilance in public spaces, anxiety (which has caused him to gain around 40–50 pounds since the date of the shooting), sleeplessness, nightmares, agoraphobia, lack of concentration, and decreased libido.
>
> 252.   Rather than provide Plaintiff Rogers with a reasonable accommodation, such as light duty work that was offered to other injured officers, Defendants Horwitz, Haba, and Beachwood chose to discriminate against Plaintiff Rogers because of his disability, and/or because Defendants Horwitz, Haba, and Beachwood perceived Plaintiff Rogers as having a disability.

(ECF No. 12, PageID # 179; Am. Comp. at ¶¶ 249–52.)

**D.     Occupational Due Process Liberty Claims.**

An occupational-liberty claim may arise when, after an adverse employment action, a public employer stigmatizes the employee by making public comments impugning his good name, honor, or reputation or imposes a stigma that forecloses other

5

employment opportunities. *Bd. of Regents v. Roth*, 408 U.S. 564, 573–74 (1972). Under this doctrine, a plaintiff must plead that (1) the defendant made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure. *Townsend v. Vallas*, 256 F.3d 661, 669–70 (7th Cir. 2001). The public-disclosure element requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large. *Ratliff v. City of Milwaukee*, 795 F.2d 612, 627 (7th Cir. 1986).

As the Sixth Circuit explained in *Doe v. Michigan Department of State Police*, 490 F.3d 491 (6th Cir. 2007), a successful plaintiff must satisfy the "stigma-plus" test set forth by the Supreme Court in *Paul v. Davis*, 424 U.S. 693 (1976). The plaintiff must "show that the state's action both damaged his or her reputation (the stigma) and that it 'deprived [him or her] of a right previously held under state law' (the plus)." *Doe*, 490 F.3d at 502 (quoting *Paul*, 424 U.S. at 708).

Blake's present allegations are similar to what was discussed in *Bacon v. Patera*, 772 F.2d 259 (6th Cir. 1985). In that case, a private investigator who had contracted to provide security services for several restaurants filed suit against the police chief of Brunswick. The chief had cited the plaintiff on five occasions for violating a city ordinance that, according to the chief, required the plaintiff to obtain a private police officer's commission. Ultimately, it was determined that no such commission was required. Nevertheless, as a result of the citations, the plaintiff lost his security contract with one of the restaurants. He filed suit alleging that the chief had deprived him of his liberty

interest in a good reputation and his right to engage in his chosen occupation. Citing *Paul*, the Sixth Circuit found that the plaintiff had demonstrated that a protected interest was infringed because he lost his security contract as a direct result of the chief's actions. *Id.* at 263-64.

"Even in *Paul v. Davis*, where the Supreme Court refused to allow a Section 1983 claim based upon injury to reputation, the Court recognized that if the damage to reputation was combined with a tangible injury such as loss of employment, a Section 1983 claim could be alleged. *Paul v. Davis*, 424 U.S. at 701. Because Bacon allegedly lost his employment at Perkins as a direct result of Chief Crook's actions, he has demonstrated that a protected liberty interest was infringed." *Id.*

Like the plaintiff in *Bacon*, Blake has likewise alleged a tangible loss of employment opportunities that is *directly connected* to Pasch's stigmatizing, publicly disclosed comments. (ECF No. 12, PageID ## 180–82; Am. Comp. at ¶¶ 255–65.)

E. **Plaintiffs Properly Pled Claims of Abuse of Process and Malicious Prosecution.**

In *Son v. Coal Equity, Inc.*, the United States Court of Appeals for the Sixth Circuit examined this issue, stressing that the course of litigation "is never certain" and that the Federal Rules of Civil Procedure "permit pleading in the alternative and even the pleading of inconsistent claims." 122 Fed. Appx. 797, 802 (6th Cir. 2004). The appeals court stated, "we believe that the quantum meruit claim should remain as an alternative theory available to the plaintiff, at least until the contract claim is concluded. To hold

7

otherwise might prove to be premature and would fail to adequately protect the rights reserved by [the plaintiff]." *Id.*

Just as the breach of contract and quantum meruit claims were found to be valid alternative causes of action based on whether a contract actually existed or not, the Plaintiffs here have similarly alleged alternative causes of action based on whether probable cause existed or not. Accordingly, if probable cause *did* exist, then the Plaintiffs' Abuse of Process claim has potential success; likewise, the absence of probable cause strengthens the Plaintiffs' Malicious Prosecution claim. Ultimately, this dichotomy indicates that dismissal of these claims is not warranted at this time; rather, discovery is necessary and vital to determining the full extent of the Plaintiffs' claims.

**F.     Civil Conspiracy to Abuse Process and Maliciously Prosecute.**

An exception to the intra-corporate conspiracy doctrine exists when "employees act outside the course of their employment." *Johnson v. Hills & Dale Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994). Here, the Plaintiffs alleged that the Defendants conspired to commit the intentional torts of abuse of process or malicious prosecution. Indeed, it is axiomatic that commission of, or conspiracy to commit, an intentional tort is always outside the course and scope of one's employment. *Keck v. Masters,* 1st Dist. Hamilton No. C-940967, 1996 Ohio App. LEXIS 5871, at *8 (Dec. 31, 1996). Accordingly, this Court should reject the Defendants' attempts at using the intra-corporate conspiracy doctrine as a shield that protects them from liability for their unlawful conduct.

**G.      Intentional Infliction of Emotional Distress and Loss of Consortium Claims.**

The Defendants contend that Blake's claim for Intentional Infliction of Emotional Distress should fail because they did not engage in "extreme and outrageous" conduct. (ECF No. 9-1, Page ID # 137.) However, Blake respectfully submits that the totality of the allegations in his Complaint indicates that the Defendants' conduct went beyond the bounds of all possible decency tolerable in a civilized society. Indeed, because of the Defendants' actions, Blake was subjected to a one-and-a-half-year criminal investigation, suffered publicly due to Pasch's stigmatizing comments, and has been denied other employment opportunities with other police departments. Such conduct should qualify as the Defendants having intentionally subjected Blake to needless, harmful, and outrageous emotional distress.

In terms of the Loss of Consortium claim, the Plaintiffs argue that Blake has suffered physical injury sufficient to support such a claim, given that an Ohio court has found Post-Traumatic Stress Disorder—which Blake has alleged he suffers from (ECF No. 12, PageID ## 178–79; Am. Comp. at ¶¶ 236–54)—can result in bodily injury:

> PTSD causes the following physical harms:
>
> [PTSD] causes brain cell damage and objectively verifiable physical injury to the human brain;
>
> [PTSD] shortens the life expectancy of persons who suffer from it;
>
> [PTSD] causes atrophy of the memory circuits (hippocampal gyrus);
>
> [PTSD] is associated with the development of a number of other somatic (bodily) problems, such as the premature development of coronary artery disease and other conditions.

*Dieringer v. Sawmiller*, 3d Dist. Auglaize No. 2-12-04, 2012-Ohio-4880, ¶ 8. Accordingly, the Loss of Consortium claim should not be dismissed.

**H.**     **Tort Immunity is an Affirmative Defense that Need Not be Pled in a Complaint.**

Defendant Calta is also a defendant in *Molnar v. City of Green*, 2019-Ohio-3083, 140 N.E.3d 1208. In *Molnar*, Calta raised the same exact defense of tort immunity as she has raised here. It was unsuccessful at the pleading stage, but she is nonetheless raising it again here at the pleading stage. Indeed, the Ninth District wrote as follows:

> Contrary to the Green Defendants' position, Mr. Molnar is not required to "anticipate a political subdivision's defenses and plead specific facts to counteract a possible affirmative defense of sovereign immunity" to withstand a motion to dismiss. *Id.* at ¶ 19. The Green Defendants' argument in this regard is inconsistent with Civ.R. 8(A) and the Civ.R. 12(B)(6) standard, and the Green Defendants have not established that the basis for their immunity defense is apparent from the face of the complaint. *See Thomas v. Bauschlinger*, 9th Dist. Summit No. 26485, 2013-Ohio-1164, 2013 WL 1224889, ¶ 12.

*Id.* at ¶ 14, 140 N.E.3d at 1213.

## II. CONCLUSION

Based on the foregoing, the Plaintiffs hereby respectfully request that the Court deny the Defendants' Partial Motion for Judgment on the Pleadings in its entirety, as the Defendants have failed to meet their burden and prove they are entitled to such relief as is available under Fed. R. Civ. P. 12(c).

Respectfully submitted,

/s/ Kevin M. Gross
Lewis A. Zipkin, Esq. (0030688)
Kevin M. Gross, Esq. (0097343)
ZIPKIN WHITING CO., L.P.A.
3637 South Green Road
Beachwood, Ohio 44122
Phone: (216) 514-6400
Fax: (216) 514-6406
Email: zfwlpa@aol.com
      kgross@zipkinwhiting.com

*Counsel for Plaintiffs Blake and Jacalyn Rogers*

### III. PROOF OF SERVICE

A true and correct copy of the Plaintiffs' Brief in Opposition to Defendants' December 15, 2020 Partial Motion for Judgment on the Pleadings was served via the Court's CM/ECF system on January 12, 2021, upon:

John T. McLandrich, Esq.
Terence L. Williams, Esq.
MAZANEC, RASKIN & RYDER CO., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
Phone: (440) 248-7906
Fax: (440) 248-8861
Email: jmclandrich@mrrlaw.com
　　　　twilliams@mrrlaw.com

　　　　　　　　　　　　　　　　　 /s/ Kevin M. Gross
　　　　　　　　　　　　　　　　Lewis A. Zipkin, Esq. (0030688)
　　　　　　　　　　　　　　　　Kevin M. Gross, Esq. (0097343)

　　　　　　　　　　　　　　　　*Counsel for Plaintiffs Blake and Jacalyn Rogers*