IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BLAKE ROGERS, *et al.*, | ) | CIVIL ACTION NO. 1:20-CV-02568 |
| | ) | |
| Plaintiffs, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | **PLAINTIFFS' STATUS REPORT ON** |
| | ) | **THE IMPACT OF ARBITRATION** |
| MARTIN HORWITZ, *et al.*, | ) | **AND SETTLEMENT IN STATE** |
| | ) | **COURT TO THE PRESENT** |
| Defendants. | ) | **FEDERAL PROCEEDINGS** |

Now come the Plaintiffs, Blake and Jacalyn Rogers, by and through undersigned counsel, and hereby respectfully submit the following status report in accordance with the Court's Order from July 24, 2023.

To answer the Court's question, the recent developments in state court have no bearing on the viability of the causes of action comprising this federal controversy, and place only a minor limitation on the remedies available to Blake and his wife (i.e., the total amount of recovery for economic damages will necessarily be offset by the $230,000.00 from the settlement, but the settlement did not cover all of the Plaintiffs' economic losses). The arbitration and settlement resolved a limited dispute between the Union and the City of Beachwood pertaining to Blake's two grievances raised under his collective bargaining agreement with the City. This lawsuit, however, involves Blake's claims against numerous individuals, none of whom were parties to the arbitration or the settlement, to address unlawful conduct which is not encompassed within the four corners of the collective bargaining agreement.

1

To further highlight the limited impact which arbitration and settlement have had on this federal action, a brief overview of Blake's current claims is helpful to the analysis, especially when contrasted against the two issues decided in arbitration. At present, Blake and his wife have raised the following claims in their Second Amended and Supplemental Complaint:

(a) Counts 1–4: Failure to promote Blake to sergeant in retaliation for him utilizing FMLA, (ECF No. 33, PageID ## 651–54);

(b) Counts 5–7: Disparate treatment based on Blake's race, (*Id.* at PageID ## 654–60);

(c) Counts 8–9: Failure to accommodate Blake's disability by unreasonably keeping Blake on administrative leave, (*Id.* at PageID ## 661–63);

(d) Count 10: Publicly disseminating stigmatizing statements which caused Blake a tangible loss of employment opportunities, (*Id.* at PageID ## 663–65);

(e) Counts 11–14: Malicious prosecution and abuse of process, (*Id.* at PageID ## 665–68);

(f) Count 15: Aiding and abetting malicious prosecution and abuse of process, (*Id.* at PageID ## 668–69);

(g) Count 16: Intentional infliction of emotional distress, (*Id.* at PageID ## 669–70);

(h) Counts 17–19: Civil actions for damages caused by criminal acts, (*Id.* at PageID ## 670–71);

(i) Count 20: Loss of consortium, (*Id.* at PageID # 672); and

(j) Count 21: Retaliatory discharge for engaging in protected activity, (*Id.* at PageID ## 672–74).

Apart from naming the City of Beachwood as a Defendant, the above items (a) through (j) were also raised against the following individuals:

  (a)  Martin Horwitz, then-Mayor of Beachwood;

  (b)  Gary Haba, then-Chief of Police of Beachwood;

  (c)  Diane Calta, then-Law Director of Beachwood;

  (d)  Nathalie Supler, a current Assistant Law Director of Beachwood; and

  (e)  James Pasch, then-Council President of Beachwood.

In stark contrast to the above claims, only the following two issues were raised in arbitration, which featured the Union, representing Blake, and the City as the only parties:

> 1. Did the City of Beachwood have just cause to issue a termination to the Grievant? If not, what is the appropriate remedy?
>
> 2. Did the City's release to a local news agency, prior to a final interdepartmental ruling and the service of that ruling on the grievant, of a Notice of Charges and Pre-Disciplinary Hearing violate the Collective Bargaining Agreement (CBA, contract)? If so, what is the appropriate remedy?

(ECF No. 42-1, PageID # 804.)

So, what exactly does this all mean? First, Blake's claims for FMLA retaliation revolve around the 2018–19 civil service exam process for promotion sergeant, namely, that because Blake used FMLA leave to be home with his wife and newborn child, Horwitz, Haba, and the City used this against him to twice deny him a promotion. As can be seen in the above excerpt, this was obviously not raised as a grievance at arbitration. Given that the officer-involved shooting took place on June 27, 2019, well after the promotional process ended, the Defendants' current position is patently untenable: "With respect to any retaliation claim, whether FMLA or ADA, etc., any claim for back wages, benefits or other damages are moot based on the settlement that has awarded any

3

lost pay for the period of termination." (ECF No. 42, PageID # 801.); "Reinstatement also obviously moots any claim for front pay[.]" (*Id.* at PageID # 799.) Thus, Blake's FMLA retaliation claims are untouched by arbitration and settlement, and he is still entitled to economic, non-economic, and punitive damages, along with attorney fees and interest.

Second, Blake's disparate treatment claims concern race-based disparities in how the Horwitz and the City handled and concluded the investigation into the June 27, 2019 incident, namely, that they showed much more favorable treatment to non-Caucasian officers than what was shown to Blake, especially in terms of punishment (i.e., non-Caucasian officers would receive a write-up while Blake was terminated). This disparate treatment was something the arbitrator noticed, particularly because the City made false claims about the facts at issue:

> The City notes that [on June 27, 2019,] the grievant shot at a shoplifter in a busy mall parking lot, with families nearby. The other incident [on March 1, 2019,] involved shots fired at a stolen police cruiser "full" of loaded weapons, and there were no innocent bystanders.
>
> \*   \*   \*
>
> The evidence does not support the City's argument that there were no innocent people around * * *. Officer Terrill Rodgers fired his service weapon at the stolen police cruiser. His written reprimand states "there was an uninvolved motorist and residential homes in the area when you fired your weapon." On a similar note, Officer Gray's written warning states that he "passed a parked police vehicle at 56 MPH and nearly became involved in a head-on collision with an uninvolved vehicle." Officer Derik Rodriguez, whose actions left the police cruiser and the loaded weapon(s) it contained available to the suspect, received a letter of reprimand.
>
> The rules that the grievant was charged with violating are in some instances the same rules these officers were charged with violating.
>
> Given the emphasis the City places on the fact that innocents were in the vicinity when the grievant fired his service weapon, this action is

4

> considered a key element of the termination. Based on the evidence, the actions Officers Rodgers and Gray endangered innocents. Yet the actions taken against these officers were far less severe than that taken against the grievant.

(ECF No. 42-1, PageID # 819–20.) However, the arbitrator did *not* attribute this disparate treatment to race, which is precisely what Blake alleges in his Second Amended and Supplemental Complaint.

Additionally, the Defendants misstate federal law by claiming "Equal Protection claims do not apply to employment law decisions." (ECF No. 42, PageID # 799.) To support this erroneous position, the Defendants cite to *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591 (2008); however, *Engquist* stands for the principal that at-will public employees cannot bring "class of one" equal protection claims, where the subject "class" is not a recognized protected classification, but rather an arbitrary classification imposed by the government. In short, not what is at issue here. Thus, Blake's race-based disparate treatment claims are untouched by arbitration and settlement, and he is still entitled to economic, non-economic, and punitive damages, along with attorney fees and interest.

Third, Blake's claims for disability discrimination revolve around the unreasonable length of time Horwitz, Haba, and the City kept Blake on administrative leave between the June 27, 2019 incident and his unlawful termination on February 22, 2021. In short, the period was too long and Blake could and should have returned to light duty work, but for Horwitz, Haba, and the City using Blake's disability against him.

While the arbitrator did order the City to compensate Blake for "what light or limited duty the grievant would have been entitled to," it was not for the period of June

5

2019 to February 2021, but for "*the first day of his termination * * * until he is reinstated in accordance with this decision.*" (ECF No. 42-1, PageID # 828 (emphasis added).) For the Defendants to claim that now that "any dispute about Rogers' entitlement to back pay or benefits related to the claim for accommodation or light duty was resolved in the parties' settlement agreement and is barred by that accord and satisfaction and estoppel" is patently false. (ECF No. 42, PageID ## 799–800). Again, the plain language of the arbitrator's opinion makes this clear:

> Given the number and seriousness of these errors, the City did not have just cause to terminate the grievant. He is to be reinstated to his position with full benefits as if he had not been terminated. Upon reinstatement his duty status vis-à-vis his injury will be such as though he had not been terminated. As for backpay, the City argued the grievant was unfit for duty during the period of termination, and that back pay for that period would therefore not be warranted. The City is to determine what light or limited duty the grievant would have been entitled to, if any, had the termination not been issued, and compensate him accordingly. That period of compensation is to begin with the first day of his termination and continue until he is reinstated in accordance with this decision. The arbitrator retains jurisdiction until the remedy is fully implemented.

(ECF No. 42-1, PageID # 828.) This is further corroborated by the language of the settlement agreement, which, importantly, concerns *only* "Blake Rogers-related Collective Bargaining Agreement claims and grievances":

> 2. **Dismissal of Appeal and Satisfaction of Judgment**: The Parties agree that the compensation paid to Rogers shall constitute full and complete satisfaction of the judgment that was entered in the Cuyahoga County Court of Common Pleas in Case No. CV-21-957347, that confirmed the Arbitrator's Award. Within 14 days of the Effective Date, the City will (a) dismiss its pending appeal in *City of Beachwood v. FOP (Beachwood Lodge 86)*, Cuyahoga County Court of Appeals Case CA-23-112532; and (b) provide the compensation in Section 1. Moreover, the Union shall file a Notice of Satisfaction of the Judgment with the Court of Common Pleas.

(ECF No. 42-3, PageID # 851.) Thus, Blake's disability discrimination claims are untouched by arbitration and settlement, and he is still entitled to economic, non-economic, and punitive damages, along with attorney fees and interest.

Fourth, Blake's occupational liberty claim does not concern the need for a name-clearing hearing; rather, Blake claims that he applied for and was rejected from other gainful employment as a direct consequence of comments Pasch made about him. Blake has previously asserted the appropriate "stigma-plus" test in prior briefing:

> As the Sixth Circuit explained in *Doe v. Michigan Department of State Police*, 490 F.3d 491 (6th Cir. 2007), a successful plaintiff must satisfy the "stigma-plus" test set forth by the Supreme Court in *Paul v. Davis*, 424 U.S. 693 (1976). The plaintiff must "show that the state's action both damaged his or her reputation (the stigma) and that it 'deprived [him or her] of a right previously held under state law' (the plus)." *Doe*, 490 F.3d at 502 (quoting *Paul*, 424 U.S. at 708).

(*See* Pls.' Opp'n Br., ECF No. 18, PageID ## 243–45.) Now, it is true and undisputed that Blake obtained a favorable reinstatement letter as part of the Union's settlement with Beachwood:

> The Reinstatement Letter will state: "In compliance with the Arbitration Award, Officer Rogers is being reinstated in good standing as if he had not been terminated because the Arbitrator did not make a finding Rogers' shooting was racially motivated and did not find that Officer Rogers was dishonest about the shooting."

(ECF No. 42-3, PageID # 850.) But what is also true and undisputed is that this settlement language does not compensate Blake for the difference between what he earned working for the City and what he *could* have earned with another employer. While the Defendants argue that a reinstatement letter placed in one's personnel file "is the only relief available under a Fourteenth Amendment liberty interest claim," (ECF No. 42, PageID # 801.),

7

binding precedent from the United States Supreme Court indicates otherwise. Additionally, the Defendants misuse the law once again— in *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404 (6th Cir. 1997), the court of appeals held that an employee was not deprived of a liberty interest when the employer stated only that the employee was terminated because of "improper or inadequate performance, incompetence, neglect of duty." Thus, Blake's occupational liberty claim is untouched by arbitration and settlement, and he is still entitled to economic, non-economic, and punitive damages, along with attorney fees and interest.

Fifth, Blake's claims for malicious prosecution and abuse of process were not foreclosed by arbitration, and certainly not by the settlement. Contrary to the Defendants' wishes, "the grievant's stated reason for drawing his service weapon is valid, in the opinion of the arbitrator. The video evidence supports his contention that the suspect appeared to reach for something as he entered the car." (ECF No. 42-1, PageID # 823.) It is difficult to reconcile the arbitrator's findings with this line from the Defendants: "The clear probable cause demonstrated by the Arbitrator's decision demonstrates the malicious prosecution claims are without merit. Rogers is estopped from arguing otherwise." (ECF No. 42, PageID # 800.) This is especially so when the state court had this to say on the matter:

> [4] In sum, the NAACP suggests Rogers' actions were unconstitutional and therefore the termination was for just cause. The record of proceedings lacks any previously raised constitutional challenge. Specifically, there was no constitutional challenge raised within Jones' criminal matter, and, no party instituted a claim for a federal civil rights violation. This court's review is limited to the record herein and the record lacks evidence of a constitutional violation.

8

> There are several public policy arguments relevant herein. First, public policy prevents the reinstatement of dishonest police officers. The only investigation into this matter was conducted by BCI, Beachwood admitted that they never conducted any independent investigation into this matter. The BCI investigation found no dishonesty by Officer Rogers in this matter. In addition, the arbitrator found no dishonesty.
>
> The second public policy argument is that public policy prevents the reinstatement of police officers who use excessive, unjustified force. No court has found that Officer Rogers committed any unlawful acts or crimes in this matter. Of course, no public policy exists to allow a violation of a police officer's due process rights.

(ECF No. 42-2, PageID ## 835, 844.) Likewise, the arbitrator noted that the City had tried, and failed, to have Blake prosecuted:

> At some point, the shooting of Jones by the grievant was referred to the Cuyahoga County Grand Jury. On October 8, 2020, a "no bill" was returned by the grand jury, effectively ending the potential for any criminal charges being brought against the grievant.
>
> On October 26, 2020, Jones pled guilty in Cuyahoga County Common Pleas Court to attempted felonious assault, among other charges, for his actions in the mall parking lot.
>
> Nevertheless, the initial complaint against Jones, filed June 28, 2019 in Shaker Heights Municipal Court[21] on behalf of the City of Beachwood, states "After backing up, JONES then put the vehicle in drive and drove forward at a high rate of speed toward Ptl. Rogers." (emphasis in original) The City cannot have it both ways. It cannot state the vehicle was driving toward the grievant when it is seeking to prosecute Jones, and later claim it was not driving toward the grievant when it is seeking to terminate him.

(ECF No. 42-1, PageID ## 806, 824.)

All this is to say that this statement from the Defendants is, at best, incredibly misleading: "This finding clearly demonstrates justification for the City's decision to

9

terminate Rogers and to refer the matter to the prosecutor for *possible* presentation to the grand jury." (ECF No. 42, PageID # 799 (emphasis added).) The Defendants did, in fact, present the June 27, 2019 incident to a grand jury, which absolved Blake of criminal liability; yet the Defendants marched forward, attempting to imprison Blake again and again. (*See* Pls. Mot. to Lift Stay, ECF No. 40.) Thus, Blake's malicious prosecution and abuse of process claims are untouched by arbitration and settlement, and he is still entitled to economic, non-economic, and punitive damages, along with attorney fees and interest.

Sixth, Blake's retaliatory discharge claim based on him engaging in protected activity, i.e., pursuing litigation against Horwitz and Beachwood for race-based disparate treatment, is still at issue despite him having been reinstated. While the arbitrator did order the City to compensate Blake in back pay from "the first day of his termination * * * until he is reinstated in accordance with this decision," it was for "what light or limited duty the grievant would have been entitled to," not full active duty—which is precisely what Blake seeks to recover under this retaliatory discharge claim. (ECF No. 42-1, PageID # 828.) Thus, Blake is still entitled to economic, non-economic, and punitive damages, along with attorney fees and interest, on this claim, with the caveat that his economic recovery will necessarily be offset by the settlement amount (i.e., the difference in what Blake would have earned had he been working full active duty as opposed to light or limited duty).

Finally, Blake's claims for (1) intentional infliction of emotional distress, (2) civil actions for damages caused by criminal acts, and his wife's claim for (3) loss of

10

consortium are entirely untouched by arbitration and settlement. These claims are also unaddressed by the Defendants in their status report. Thus, the Plaintiffs are still entitled to economic, non-economic, and punitive damages, along with attorney fees and interest, on each of these claims.

Neither arbitration nor settlement addressed Blake's pending requests for non-economic damages, punitive damages, and attorney fees; rather, arbitration addressed only some of his economic losses stemming from his unjustified termination. But even to that, neither arbitration nor settlement addressed Blake's economic damages associated with his claims for:

(a) failure to promote in retaliation for utilizing FMLA, i.e., the difference between a sergeant's pay and a patrolman's pay;

(b) disparate treatment based on race, i.e., losses of mandatory and voluntary overtime, holiday pay, etc.;

(c) being wrongfully retained on administrative leave due to disability discrimination, i.e., losses of mandatory and voluntary overtime, holiday pay, etc.;

(d) tangible loss of employment opportunities because of stigmatizing public statements, i.e., the difference between current and prospective income;

(e) malicious prosecution and abuse of process, i.e., attorney fees, litigation costs, etc.;

(f) civil restitution for damages caused by criminal acts, i.e., attorney fees, litigation costs, sums fixed by statute, etc.; and

(g) loss of employment in retaliation for engaging in protected activity, i.e., losses of mandatory and voluntary overtime, holiday pay, attorney fees, litigation costs, etc.

Ultimately, the Defendants' Janus-faced assertions avoid addressing the substance of what occurred in state court, presenting instead a stilted, conclusory, and matter-of-fact rendition of events intended to stifle the truth. If the law and facts are so "clearly" on the Defendants' side for "any and all" of Blake's claims, as they seem to think, then why would Arbitrator Beebe and Judge Corrigan both need to point out that the City regularly hid relevant information from Blake and the Union throughout the disciplinary process? What is there for the Defendants to conceal if arbitration and settlement in state court "obviously moot" Blake's claims in federal court? The Court should not permit the Defendants to use their status report as an *ad hoc* motion for summary judgment, nor as a chance to relitigate their losing arguments.[1]

In sum, the substance of this federal action is not impacted in any meaningful way by the arbitration and settlement between the Union and the City of Beachwood in state court. The Plaintiffs' claims are based on the unlawful conduct of individuals who worked for the City of Beachwood, not on a breach of the collective bargaining agreement between the Union and the City of Beachwood. The Plaintiffs' claims should thus proceed to a jury without delay, as no part of their Second Amended and Supplemental Complaint is moot or estopped.

---

[1] Offensive collateral estoppel is a type of collateral estoppel, also termed issue preclusion, barring a party from relitigating an issue decided against that party in an earlier action, even if the second action is significantly different from the first. Offensive collateral estoppel is asserted by a plaintiff in a suit to prevent the defendant from relitigating an issue previously decided against the defendant.

Federal district courts have "broad discretion to determine" whether to apply collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

Respectfully submitted,

/s/ Kevin M. Gross
Lewis A. Zipkin, Esq. (0030688)
Kevin M. Gross, Esq. (0097343)
Zipkin Whiting Co., L.P.A.
3637 Green Road, Second Floor
Beachwood, Ohio 44122
Phone: (216) 514-6400
Fax: (216) 514-6406
Email: lawsmatter2@gmail.com
        kgross@zipkinwhiting.com

*Counsel for Plaintiffs Blake and Jacalyn Rogers*

## **CERTIFICATE OF SERVICE**

A true and correct copy of the *Plaintiffs' Status Report on the Impact of Arbitration and Settlement in State Court to the Present Federal Proceedings* was served via the Court's CM/ECF system on August 9, 2023, upon:

    John T. McLandrich, Esq.
    Terence L. Williams, Esq.
    MAZANEC, RASKIN & RYDER CO., L.P.A.
    100 Franklin's Row
    34305 Solon Road
    Cleveland, Ohio 44139
    Phone: (440) 248-7906
    Fax: (440) 248-8861
    Email: jmclandrich@mrrlaw.com
           twilliams@mrrlaw.com

    *Counsel for Defendants Martin Horwitz,*
    *Gary Haba, Diane Calta, Nathalie Supler,*
    *James Pasch, and the City of Beachwood*

 

                                                    Respectfully submitted,

                                                    /s/ Kevin M. Gross
                                                    Lewis A. Zipkin, Esq. (0030688)
                                                    Kevin M. Gross, Esq. (0097343)

                                                    *Counsel for Plaintiffs Blake and Jacalyn*
                                                    *Rogers*