# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| BLAKE ROGERS, *et al.*, | ) | CASE NO. 1:20-cv-02568 |
| | ) | |
| Plaintiffs, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| MARTIN HORWITZ | ) | |
| *In His Official and Individual* | ) | **MEMORANDUM OPINION AND ORDER** |
| *Capacities*, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon an Amended Motion for Judgment on the Pleadings as to Plaintiff Blake Rogers (Mr. Rogers) and Plaintiff Jacalyn Rogers's (Ms. Rogers) (collectively, Plaintiffs or the Rogers) First Amended Complaint, filed by Defendants Martin Horwitz (Horwitz), Gary Haba (Haba), Diane Calta (Calta), Nathalie Supler (Supler), James Pasch (Pasch), and the City of Beachwood (Beachwood) (collectively, Defendants). (R. 23). Before the Court is also Defendants' Conforming Motion for Judgment on the Pleadings as to Plaintiffs' First Amended Complaint (R. 26), and Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' Second Amended Complaint (R. 35).[1] For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Amended Motion for Judgment

---

[1] Plaintiffs' First and Second Amended Complaints (collectively, the Complaints) are nearly identical except for minor changes related to the addition of a retaliatory discharge claim to the Second Amended Complaint. (*Compare* R. 12, *with* R. 33). For the sake of simplicity, throughout this Opinion and Order, the Court cites to allegations in the Second Amended Complaint.

on the Pleadings and Conforming Motion for Judgment on the Pleadings as to the First Amended

Complaint, and GRANTS Defendants' Motion for Judgment on the Pleadings as to Plaintiffs'

Second Amended Complaint.

## I. Plaintiffs' Factual Allegations

### A. <u>The Parties</u>

Mr. Rogers—who is married to Ms. Rogers—was a police officer with the Beachwood

Police Department (BPD) beginning on June 17, 2013. (R. 33, PageID# 628 ¶¶ 1–2). As alleged

in the Complaints, Defendants are all Beachwood officials, sued in their individual and official

capacities, and the City of Beachwood itself: Horwitz—the Mayor and Safety Director; Haba—

the Chief of Police; Calta—the Law Director; Supler—the Assistant Law Director; and Pasch—

the President of the Beachwood City Council. (*Id.*, PageID# 629–630 ¶¶ 4–8). Beachwood is a

municipality in Cuyahoga County, Ohio. (*Id.*, PageID# 630 ¶ 9).

### B. <u>FMLA Leave and Denial of Promotions</u>

Plaintiffs allege that in June 2016, Mr. Rogers submitted a request to the BPD for three

weeks of family leave pursuant to the Family and Medical Leave Act (FMLA) to care for his

wife and newborn son. (*Id.*, PageID# 633 ¶¶ 28–31). Plaintiffs contend that the BPD's

Department of Human Resources pushed back on that request, saying that Mr. Rogers could only

take five days of leave. (*Id.* ¶ 33). While the BPD ultimately granted Mr. Rogers three weeks of

leave, upon his return from leave, Plaintiffs assert that Mr. Rogers's fellow officers, including

Defendant Haba, "ignore[d] and ostracize[d]" Mr. Rogers. (*Id.*, PageID# 634 ¶¶ 35–39).

Plaintiffs allege that in February 2017, Haba and Lieutenant John Resek unilaterally

changed Mr. Rogers's monthly work schedule without providing a truthful explanation for the

change. (*Id*. ¶ 41–42). According to Plaintiffs, Haba changed Mr. Rogers's schedule because Mr.

Rogers had taken FMLA leave. (*Id*., PageID# 634–635 ¶¶ 41–45).

In or around the end of 2017, Mr. Rogers applied for a permanent night shift position

with the BPD. (*Id*., PageID# 635 ¶¶ 46–47). Despite there being allegedly seven positions

available and seven total applicants, including Mr. Rogers, and Mr. Rogers having the "second-

highest seniority level of all the applicants," Mr. Rogers did not receive one of the positions. (*Id*.

¶¶ 47–50). After not getting one of the night shift positions, Mr. Rogers met with Haba who

allegedly said that Mr. Rogers "did not deserve one of the permanent night shift positions"

because he was "disruptive," a "bad influence," and that "half the Department despised him."

(*Id*., PageID# 636 ¶¶ 56–57). In March 2018, Mr. Rogers ultimately received one of the night

shift positions. (*Id*., PageID# 637 ¶ 64).

In or around 2018, Mr. Rogers submitted another request for FMLA leave to care for his

wife and second child. (*Id*., PageID# 639 ¶ 78). Haba allegedly called Mr. Rogers a "snowflake"

for taking this second FMLA leave. (*Id*.).

In or around 2018, Mr. Rogers took the Civil Service Examination in an attempt to earn a

promotion to sergeant. (*Id*., PageID# 638 ¶ 68). Plaintiffs allege that even though Mr. Rogers

"scored the highest on the Civil Service Commission Interview and Assessment Center Panel,"

Haba "manipulated" Mr. Rogers's exam score by awarding Mr. Rogers the lowest number of

discretionary "Chief's Points" due to Mr. Rogers's most recent request to take FMLA leave. (*Id*.,

PageID# 638–639 ¶¶ 70, 72–73, 77). As a result, Mr. Rogers's total exam score ranked third,

meaning that he did not receive one of the two open sergeant positions. (*Id*., PageID# 638 ¶ 73).

In total, Mr. Rogers was twice passed over for a sergeant promotion. (*Id*., PageID# 640 ¶ 84).

Defendant Horwitz allegedly knew about Haba's manipulation of Mr. Rogers's exam score and "rubber stamped" Haba's conduct. (*Id*., PageID# 638 ¶ 71).

In 2019, Mr. Rogers applied and interviewed for the BPD's two new K-9 Units. (*Id*., PageID# 640 ¶¶ 87, 90). Plaintiffs assert that Mr. Rogers's interviewers, who were selected by Haba, "interrogated" Mr. Rogers regarding his use of FMLA leave and asked why he took "so much" leave. (*Id*., PageID# 640–641 ¶¶ 92–93). Plaintiffs allege that Mr. Rogers was penalized for his use of FMLA leave and was ultimately not selected for either K-9 Unit. (*Id*., PageID# 641 ¶¶ 93–94).

### C. Incident with Jaquan Jones and Aftermath

On June 27, 2019, Mr. Rogers was dispatched to Beachwood Place to investigate a possible shoplifting. (*Id*. ¶ 95). When he was at the scene, Mr. Rogers allegedly saw suspect Jaquan Jones (Jones) running from Saks Fifth Avenue to a parking lot, so Mr. Rogers followed Jones in his police cruiser. (*Id*. ¶¶ 97–98). Mr. Rogers allegedly stepped out of his cruiser, ordered Jones to stop entering his own vehicle, and to put his hands up, but Jones did not comply. (*Id*., PageID# 641–642 ¶¶ 99–101). According to Plaintiffs, Jones drove his vehicle over Mr. Rogers's left foot and ankle, and Mr. Rogers subsequently "shot at Jones." (*Id*. ¶¶ 101–102). After a high-speed chase, Jones abandoned his vehicle and fled on foot. (*Id*., PageID# 642 ¶ 104). Approximately one month later, Jones was arrested in Cleveland for selling heroin to an undercover police officer. (*Id*. ¶ 105). Plaintiffs allege that Jones was indicted for felonious assault of a peace officer and pled guilty to attempted felonious assault. (*Id*., PageID# 643 ¶ 110).

On July 9, 2019, Haba requested Horwitz's permission to put Mr. Rogers on paid administrative leave for Mr. Rogers's participation in the shooting incident involving Jones. (R. 25-3, PageID# 483). Horwitz granted permission that same day. (*Id*.). The leave was effective as of June 28, 2019, until the BPD "has received facts surrounding any potential criminal charges and [Mr. Rogers's] fitness to return to duty has been established." (*Id*.; R. 33, PageID# 642 ¶ 106).

On or about June 27, 2019, Mr. Rogers filed worker's compensation claims related to the injuries he sustained during the incident with Jones. (R. 33, PageID# 643 ¶ 115). Plaintiffs allege that the Ohio Bureau of Worker's Compensation determined that Mr. Rogers had a permanent partial disability from the incident. (*Id*. ¶¶ 116–117). Mr. Rogers also allegedly suffers from post-traumatic stress disorder (PTSD) as a result of the incident with Jones. (*Id*. ¶ 118). Plaintiffs contend that Defendants Horwitz and Beachwood prevented Mr. Rogers from getting the surgery and treatments he needs for his ailments, and that Horwitz and Beachwood kept Mr. Rogers on administrative leave because he filed for worker's compensation. (*Id*., PageID# 643–644 ¶¶ 119, 121). Additionally, Plaintiffs allege that despite Mr. Rogers being "ready, willing, and able" to perform "light-duty" work, the BPD failed to provide Mr. Rogers reasonable accommodations. (*Id*., PageID# 644 ¶¶ 128–129).

Following Mr. Rogers's incident with Jones, Defendant Pasch allegedly made public comments stating that "the incident is horrible and was avoidable" and "the use of unjust deadly force cannot result in a second chance." (*Id*., PageID# 645 ¶¶ 135–136). Plaintiffs allege that Pasch's comments led to Mr. Rogers losing employment opportunities, including a job in which his application was held in abeyance. (*Id*., PageID# 645–646 ¶¶ 138–139).

D. Mr. Rogers's Criminal Prosecution and the BPD's Internal Investigation

Plaintiffs allege that Defendants Horwitz, Haba, Calta, Supler, and Beachwood made it their "mission" to get Mr. Rogers prosecuted for shooting Jones, despite law enforcement officials from various public offices in Ohio advising these Defendants that Mr. Rogers could not be criminally prosecuted for the incident. (*Id*., PageID# 646 ¶¶ 140, 142–143). And even though Horwitz, Haba, Calta, Supler, and Beachwood were "repeatedly rebuffed" in their requests for Mr. Rogers's criminal prosecution and they knew that Jones had been indicted by a Cuyahoga County Grand Jury for driving over Mr. Rogers's foot and ankle, they were ultimately able to "coerce" the presentation of Mr. Rogers's case to a Cuyahoga County Grand Jury (the Grand Jury) on October 9, 2020. (*Id*. ¶¶ 140–141, 145–146). On the same day as the presentation of Mr. Rogers's case, the Grand Jury returned a no bill, declining to indict Mr. Rogers. (*Id*., PageID# 646–647 ¶¶ 147–148).

Defendants allegedly "d[id] not accept" the Grand Jury's findings and conducted their own internal investigation into Mr. Rogers's shooting of Jones. (*Id*., PageID# 647 ¶¶ 150–151). According to Plaintiffs, Defendants' true motivation for their efforts to get Mr. Rogers indicted and commencing their own internal investigation was to provide "just cause" for Mr. Rogers's termination under the Collective Bargaining Agreement (CBA) between Beachwood and the police union. (*Id*. ¶¶ 149, 152–153; R. 25-1).

E. Mr. Rogers's Termination

Plaintiffs originally filed the instant lawsuit in the Cuyahoga County Court of Common Pleas on October 12, 2020, alleging, *inter alia*, discriminatory practices in violation of Ohio and

6

federal law. (R. 1-1, PageID# 4, 27, 35; R. 33, PageID# 648 ¶¶ 161–162). Defendants removed the case to this Court, on November 16, 2020. (R. 1; R. 33, PageID# 649 ¶ 164).

On February 18, 2021, Beachwood and Horwitz held an "administrative pre-disciplinary hearing" regarding Mr. Rogers's shooting of Jones. (R. 33, PageID# 649 ¶ 167; R. 33-1, PageID# 678). On February 22, 2022, Horwitz issued a disciplinary letter to Mr. Rogers finding that Mr. Rogers's actions warranted his termination because he "(1) failed to properly perform [his] duties as it relates to the officer involved shooting on June 27, 2019 and (2) [was] not entirely honest about the shooting." (R. 33, PageID# 649 ¶ 169; R. 33-1, PageID# 678–680). Plaintiffs contest that Horwitz's justification for Mr. Rogers's termination was pretextual, and that Mr. Rogers was actually terminated in retaliation "for having filed a civil action" against Defendants that challenged Defendants' "discriminatory conduct." (R. 33, PageID# 650–651 ¶¶ 176–177).

## II. Procedural Background

As mentioned above, Plaintiffs originally filed this lawsuit in the Cuyahoga County Court of Common Pleas on October 12, 2020, alleging a variety of federal and state law claims against Defendants. (R. 1-1). Defendants removed the case to this Court on November 16, 2020. (R. 1).

On December 29, 2020, Plaintiffs filed a First Amended Complaint, and Defendants responded with a Motion for Judgment on the Pleadings. (R.12; R. 21). On February 26, 2021, the previously assigned District Judge granted a motion from Plaintiffs to strike Defendants' brief in support of the Motion for Judgment on the Pleadings for failing to comply with Local Rules. On March 4, 2021, Defendants filed an Amended Motion for Judgment on the Pleadings. (R. 23). However, the judge granted a separate motion to strike as to the Amended Motion for Judgment on the Pleadings, on March 5, 2021, because of Defendants' failure to comply with the

Court's Civil Standing Order regarding Defendants' filing of exhibits with the Motion. Defendants were ordered to file another Motion for Judgment on the Pleadings and exhibits that conform to the required specifications. At the same time, the judge also ordered Plaintiffs to respond to the non-conforming brief and exhibits that were already filed on the docket. On March 8, 2021, Plaintiffs filed an opposition brief to the Amended Motion for Judgment on the Pleadings that had been filed on March 4, 2021 (R. 27), and Plaintiffs filed a Conforming Motion for Judgment on the Pleadings to comply with the prior order (R. 26).

On April 27, 2021, after obtaining leave from the Court, Plaintiffs filed a Second Amended Complaint to add a state law claim for retaliatory discharge. (R. 33, PageID# 672–674). On May 14, 2021, Defendants filed a Motion for Judgment on the Pleadings as to the Second Amended Complaint, making arguments related only to Plaintiffs' new claim for retaliatory discharge. (R. 35). On June 10, 2021, Plaintiffs filed an opposition to Defendants' most recent Motion for Judgment on the Pleadings (R. 36), and on June 24, 2021, Defendants filed a reply brief (R. 37). The case has been reassigned to the undersigned.

As the instant Motions were pending, the Court became aware of parallel public legal proceedings concerning issues related to this case. First, there was an arbitration before the Federal Mediation and Conciliation Service, bearing the case number 210226-04390 (R. 42-1). The arbitration addressed two grievances that the Fraternal Order of Police levied against Beachwood: the first regarding Beachwood's termination of Mr. Rogers, and the second addressing Beachwood's release of information about Mr. Rogers to a local news agency. (*Id.*, PageID# 804). On October 12, 2021, the arbitrator found in favor of Mr. Rogers on both issues, deciding in part that Beachwood did not have "just cause" to terminate Mr. Rogers. (*Id.*, PageID# 828). Accordingly, the arbitrator ordered that (i) Mr. Rogers must be reinstated to his

position, and (ii) that he is entitled to backpay dated from the outset of his termination through his reinstatement. (*Id.*, PageID# 828). Beachwood subsequently filed a motion to vacate the arbitration award in the Cuyahoga County Court of Common Pleas, and the motion was denied. (R. 42-2). Beachwood appealed the state court's decision to Ohio's Eighth Appellate District in case number CA-23-112532. *See City of Beachwood v. Fraternal Order of Police (Beachwood Lodge 86)*, No. CA-23-112532 (Ohio Ct. App. 2023).

On July 18, 2023, Beachwood approved a settlement agreement with the Fraternal Order of Police and Mr. Rogers as to the issues addressed in the arbitration and ensuing state proceedings. (R. 42-3). In relevant part, Beachwood authorized the mayor to make a payment to Mr. Rogers in the amount of $230,000, as compensation for "any and all backpay and benefits" that Mr. Rogers may be owed. (*Id.*, PageID# 849). Beachwood also agreed to reinstate Mr. Rogers to full duty, conditional upon passing a medical and psychological examination. (*Id.*, PageID# 850). The parties also agreed that Beachwood would dismiss its pending appeal before the Eighth Appellate District. (*Id.*, PageID# 851).

After the Court learned about these parallel proceedings, it instructed the parties to file their respective positions as to the impact, if any, of the proceedings on the instant case. The parties filed their status reports on August 9, 2023. (R. 42: R. 43).

### III. Standard of Review

The Sixth Circuit Court of Appeals has observed that "[a] Rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Rule 12(b)(6) motion to dismiss." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) (citations omitted).

When ruling upon a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), a court

must accept as true all the factual allegations contained in the complaint and construe the

complaint in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S.

89, 93–94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *accord Streater v. Cox*, 336 F.

App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept a conclusion of law

as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, L.Ed.2d 929.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L.Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)

(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007)).

## IV. Discussion

### A. <u>FMLA Retaliation (Counts 1–4)</u>

Plaintiffs bring four claims of retaliation in violation of the FMLA against Defendants Horwitz, Haba, and Beachwood, related to the BPD denying Mr. Rogers job promotions on four separate occasions: twice for a sergeant position and twice for a K-9 Unit position. (R. 33, PageID# 651–654 ¶¶ 194–200). Plaintiffs allege that Horwitz, Haba, and Beachwood intentionally chose not to promote Mr. Rogers because he took FMLA leave after the birth of his children. (*Id.*, PageID# 653 ¶¶ 194, 196). In their Motion for Judgment on the Pleadings, Defendants put forward three legal arguments for why the Court may not grant relief for Plaintiffs' FMLA retaliation claims: (i) these claims are subject to arbitration pursuant to the terms of the CBA between Beachwood and the police union; (ii) the FMLA does not impose individual liability on employers or officials of a "public agency"; and (iii) the statute of limitations on these claims has expired. (R. 26, PageID# 496–498). Defendants separately argue that Plaintiffs' FMLA claims "for back wages, benefits or other damages are moot" due to Beachwood's settlement with Mr. Rogers in the parallel proceedings. (R. 42, PageID# 801). The Court considers each of these arguments in turn.

### 1. *Arbitration Subject to Collective Bargaining Agreement*

As mentioned earlier, Beachwood and the Fraternal Order of Police Lodge 86 (the Union) entered into a CBA, which was effective between November 1, 2017, and October 31, 2020. (R. 25-1, PageID# 441). Relevant here is Article 6 of the CBA, which contains provisions that specify the procedures for police officers to raise and appeal grievances. (*Id.*, PageID# 447). Before considering Defendants' arguments related to the

11

CBA, the Court addresses a preliminary issue regarding how it may consider the CBA when assessing Defendants' Motions for Judgment on the Pleadings.

Plaintiffs argue that because Defendants submitted the CBA as an exhibit to their Motions for Judgment on the Pleadings, the Court cannot consider it without converting Defendants' motions to ones for summary judgment. (R. 27, PageID# 523). On this issue, the Sixth Circuit has held that "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to a defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). Despite the Rogers' assertions to the contrary, the CBA is central to their allegations: the Rogers refer to the CBA explicitly in their Complaints, and even cite to the CBA as support for their argument that Mr. Rogers could only be terminated for "just cause." (R. 33, PageID# 633, 647, 667 ¶¶ 34, 153, 307). And the Rogers' FMLA retaliation claims hinge entirely on whether these claims are subject to the arbitration provisions in the CBA. Just because Plaintiffs failed to attach an essential document to their Complaints does not mean that the Court must turn a blind eye to its contents or else convert the underlying motions to ones for summary judgment. The Court will consider the CBA filed with Defendants' Motions for Judgment on the Pleadings and will not construe Defendants' motions as ones for summary judgment.

Turning now to the substance of Defendants' argument, Article 6 of the CBA provides for specific procedures that must be followed when a "grievance arises." (R. 25-1, PageID# 447). The CBA defines "grievance" as a "dispute or difference between [Beachwood] and the [Union],

12

or between [Beachwood] and an employee . . . concerning the interpretation and/or application of any provision in this Agreement and any disciplinary actions." (*Id.*). As relevant here, after a "grievance arises" and an employee exhausts three procedural steps—including taking up the grievance "orally with his immediate supervisor," filing a written record of the grievance with the Chief of Police, and appealing to the Mayor—the Union "may submit the grievance to arbitration by notifying the Mayor in writing." (*Id.*, PageID# 447–448). Even though the step in the procedure providing for arbitration uses the word "may," the CBA explicitly provides that the grievance procedure set forth in Article 6, "*shall* be observed." (*Id.*, PageID# 447 (emphasis added)). In other words, if a dispute constitutes a "grievance" under the CBA, arbitration is the only course available to an employee for resolution of that grievance once the CBA's prior procedural steps have been exhausted without satisfaction.

As far as its other relevant provisions, the CBA also contains a non-discrimination clause that provides, "Both [Beachwood] and the [Union] recognize their respective responsibilities under Federal and State civil rights laws, fair employment practice acts, and other similar constitutional and statutory requirements. Therefore, both [Beachwood] and the [Union] reaffirm their commitments, legal and moral, not to discriminate or show favoritism in any manner relating to employment on the basis of race, color, creed, national origin, sex, or [Union] activities." (*Id.*, PageID# 446–447). The CBA also provides that Beachwood maintains the exclusive authority regarding employee "lay off[s] and promot[ions]." (*Id.*, PageID# 445).

Ohio Revised Code § 4117.10(A) provides, "If [an agreement between a public employer and an exclusive representative] provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no

13

jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure." Ohio Rev. Code § 4117.10(A). Courts in the Sixth Circuit that have examined the interplay between this statute and federal jurisdiction have held that political subdivisions "are exempt from federal jurisdiction in an action brought by a union employee seeking relief under a collective bargaining agreement." *Gamble v. Greater Cleveland Reg'l Transit Auth.*, 2015 WL 5782073, at *3 (N.D. Ohio Sept. 30, 2015) (*citing Roulhac v. Sw. Reg'l Transit Auth.*, 2008 WL 920354 (S.D. Ohio Mar. 31, 2008)), *aff'd*, 2017 WL 5135537 (6th Cir. June 2, 2017)). In other words, in situations where an interpretation of the CBA is "dispositive" of a plaintiff's claim, the plaintiff actually alleges a "state law contract claim over which [the federal court] lacks jurisdiction." *Id.*; *see also Smith v. Bd. of Trs. Lakeland Cmty. College*, 746 F. Supp. 2d 877, 896 (N.D. Ohio 2010) ("[W]hen a collective bargaining agreement provides for binding arbitration of grievances relating to 'wages, hours, and terms and conditions' of employment, binding arbitration is the *exclusive* remedy for 'violations of employees' employment rights arising from the collective bargaining agreement.'" (emphasis in original)).

However, the holdings of such cases compelling arbitration are limited by another line of precedent that, while not specifically considering Ohio Rev. Code § 4117.10(A), is relevant. These cases apply the underlying principle that "[t]he existence of a collective bargaining agreement does not prevent an employee from filing and prosecuting claims under federal or state statutes. While an employee's contractual rights under the collective bargaining agreement are subject solely to the grievance procedures contained therein, his statutory rights are not." *Smith*, 746 F. Supp. 2d at 897 (internal citations and quotations omitted); *see also Lyons v. Jacobs*, 2017 WL 4168369, at *5 (S.D. Ohio Sept. 20, 2017) ("Ohio law expressly recognizes

that laws pertaining to civil rights will prevail over conflicting provisions of agreements between employee organizations and public employers when the agreement does not make a specification about a matter." (internal quotation marks omitted)). In *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 72, 82, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998), the Supreme Court held that where a collective bargaining agreement did not contain a "clear and unmistakable" waiver of the "covered employees' rights to a judicial forum for federal claims of employment discrimination," the CBA's "general arbitration clause" did not compel arbitration of the plaintiff's claim under the Americans with Disabilities Act (ADA).

The Sixth Circuit applied the *Wright* Court's rationale in *Bratten v. SSI Services, Inc.*, 185 F.3d 625 (6th Cir. 1999). In that case, the CBA at issue contained a non-discrimination provision that stated in relevant part that the "Company and the Union . . . will not discriminate against any employee . . . because of . . . presence of a disability or handicap in connection with employment." *Id.* at 627–28 (emphasis omitted). The CBA also mandated that complaints under the CBA were to be resolved through a grievance and arbitration procedure set forth in the CBA. *Id.* at 628. The Sixth Circuit considered whether it had jurisdiction to hear plaintiff's ADA claim or if the CBA compelled arbitration. *Id.* In *Bratten*, the Sixth Circuit held that there was not a "clear and unmistakable" waiver of plaintiff's rights to a judicial forum to litigate federal statutory ADA claims. *Id.* at 631. The court reasoned that compliance with the ADA was not an "express contractual commitment" in the CBA. *Id.* Additionally, the court held that the provision of the CBA containing the non-discrimination clause was a "wholly separate provision from the grievance resolution procedure set forth [in a different article of the agreement]." *Id.* As a result, the Sixth Circuit found that the federal courts had jurisdiction over the plaintiff's ADA claim despite the arbitration clause in the CBA. *Id.* at 632.

A more recent Sixth Circuit decision considering this issue is *Nealy v. Shelly & Sands, Inc.*, 852 F. App'x 879 (6th Cir. 2021). In that case, the plaintiff filed a complaint raising claims against his former employer under the Civil Rights Act. *Id.* at 880. The CBA contained an anti-discrimination clause that provided, "It is a condition of this agreement to provide equal opportunity for Employment for all qualified persons, and to prohibit discrimination in employment because of race, creed, color, sex, age, or national origin. There shall be full compliance with all applicable Federal and State Statutes, regulations, rules, and orders of appropriate Federal or State agencies having jurisdiction over the subject matter of discrimination in employment." *Id.* at 880–81. A separate provision of the CBA provided, "Any and all claims regarding equal employment opportunity provided for under this Agreement or under any federal, state or local fair employment practices law shall be exclusively addressed by an individual employee or the union under the grievance and binding arbitration provision of this agreement." *Id.* at 881. In *Nealy*, the Sixth Circuit distinguished prior cases that had held there was not a "clear and unmistakable" waiver of a judicial forum by noting that the anti-discrimination provision in *Nealy* explicitly required "full compliance with all applicable Federal and State Statutes," and that the grievance and arbitration provision of the CBA explicitly referred to "claims regarding equal employment opportunity . . . under any federal, state or local fair employment practices." *Id.* at 883. For the *Nealy* court, this was enough to show a clear and unmistakable waiver. *Id.*

Here, the facts more closely align with *Bratten* than *Nealy*, so the Court holds that Mr. Rogers did not waive his right to a judicial forum for his FMLA retaliation claims. As noted earlier, the Rogers' FMLA retaliation claims—which are federal statutory claims—are related to Plaintiffs' allegations that some Defendants intentionally chose not to promote Mr. Rogers

because he took FMLA leave. (R. 33, PageID# 653 ¶¶ 194, 196). In the CBA between Beachwood and the Union, there are no general provisions regarding family or medical leave, let alone specifically referencing the FMLA statute. (*See generally* R. 25-1). The closest that the Court can find is a general non-discrimination provision that only mentions "civil rights laws, fair employment practices acts, and other similar constitutional and statutory requirements." (R. 25-1, PageID# 446–447). There is also nothing in the CBA's arbitration clause itself regarding specific statutory claims covered by the CBA that are subject to arbitration: the sole indication of what types of issues must be sent to arbitration are "grievances," which, as mentioned before, are limited to disputes regarding the "interpretation and/or application of any provision in this Agreement and any disciplinary action." As a result, there is nothing sufficiently specific in the CBA for the Court to find that there is an "unmistakable and clear" waiver of Plaintiffs' ability to choose a judicial forum for their FMLA retaliation claims.

In support of their argument that the Rogers' FMLA claims should be subject to arbitration, Defendants assert that Mr. Rogers's "right" to promotions to sergeant and the K-9 Units existed only "by virtue of the CBA." (R. 26, PageID# 497). Defendants contend that the CBA vests Beachwood with the "sole right to promote" officers and that a Memorandum of Understanding governing the K-9 Units attached as an exhibit to Defendants' Motion—and whose terms are incorporated into the CBA—provides that the "assignment and removal of canine handlers shall be at the sole discretion of the Chief of Police." (*Id*.; R. 25-2, PageID# 481–482). As a result, the Defendants continue that Rogers' FMLA claims related to denied promotions fall under the express terms of the CBA, and pursuant to the holding in *Gamble*, the Rogers "should not be permitted to skirt [Ohio Rev. Code] § 4117.10 by converting a state law contract claim into a federal cause of action." (R. 26, PageID# 496).

17

Upon review, the Court does not find Defendants' arguments persuasive. The Court recognizes that Article 2 of the CBA vests Beachwood with the exclusive right to, *inter alia*, "lay off and promote" officers. (R. 25-1, PageID# 445). And the K-9 Unit Memorandum of Understanding—whose terms the Court will assume for the sake of argument are in fact incorporated into the CBA—does provide that the Chief of Police has the exclusive discretion for the assignment and removal of canine handlers. (R. 25-2, PageID# 481). However, the Rogers' FMLA claims do not turn on an interpretation of any of these provisions: the Rogers do not argue that Beachwood and its officials lack the right to promote BPD officers. The Rogers instead argue that some Defendants retaliated against Mr. Rogers in violation of his federal statutory rights—for which claims Mr. Rogers did not clearly or unmistakably waive his ability to recover in his choice of judicial forum. This is the same reason why Defendants' reliance on *Gamble* is misplaced. (R. 26, PageID# 496–497). In *Gamble*, the plaintiff brought an ADA discrimination claim alleging that the defendant misclassified the plaintiff's knee injury so that the defendant "could appropriately terminate plaintiff under its Attendance Policy with its Long Terms Absences provision." *Gamble*, 2015 WL 5782073, at *1, 3. As a result, the *Gamble* court held that an interpretation of the Attendance Policy was "dispositive" to the plaintiff's discrimination claim, and the court lacked jurisdiction over what was, in reality, a state law contract claim. *Id*. at *3. In the instant case, and unlike *Gamble*, Defendants cannot point to a single provision in the CBA whose interpretation would be dispositive of the Rogers' FMLA retaliation claim.

For the foregoing reasons, the Court holds that Plaintiffs' FMLA retaliation claims are not subject to arbitration, and thus appropriately fall within the Court's jurisdiction.

2. *FMLA Liability for Employers or Officials of a "Public Agency"*

Defendants next argue that Defendants Horwitz and Haba may not be held liable in their individual capacities for their alleged violation of the FMLA. (R. 26, PageID# 497–498). The Sixth Circuit has clearly held as much, finding that the FMLA "does not impose individual liability on public agency employers." *Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003); *see also Pozsgai v. Ravenna City Schools Bd. of Educ.*, 2012 WL 1110013, at *9 n.6 (N.D. Ohio Mar. 30, 2012). A "public agency," as defined by the FMLA is a "political subdivision of a State." 29 U.S.C. § 203(x).

Defendants Horwitz and Haba are employers of a public agency for the purposes of the FMLA: Haba is Beachwood's Chief of Police, and Horwitz is Beachwood's Mayor and Safety Director. (R. 33, PageID# 629 ¶¶ 4, 5). Beachwood is a political subdivision of the state of Ohio. Therefore, the FMLA does not impose liability on Horwitz or Haba in their individual capacities.

Plaintiffs argue that because the Sixth Circuit's holding in *Mitchell* is the minority position of the United States Courts of Appeals to have considered this issue, that this Court should reexamine the law of this Circuit. (R. 27, PageID# 525–528). The Court must, of course, decline this invitation.

For the foregoing reasons, the Court holds that Plaintiffs' FMLA retaliation claims are dismissed as to Defendants Horwitz and Haba in their individual capacities.

3. *Statute of Limitations*

Next, Defendants argue that at least part of the Rogers' FMLA claims are barred by the applicable statute of limitations. (R. 26, PageID# 498). The FMLA provides for a general statute of limitations of "2 years after the date of the last event constituting the

alleged violation." 29 U.S.C. § 2617(c)(1). But if the action is for a "willful violation" of the FMLA, the statute of limitations is "3 years of the date of the last event constituting the alleged violation for which such action is brought." *Id*. § 2617(c)(2).

The facts in Plaintiffs' Complaints appear to allege that Defendants' violation of the FMLA was willful, so the Court will consider the three-year statute of limitations at this stage of the litigation. (*See, e.g.*, R. 33, PageID# 640 ¶¶ 91–92 (alleging that during Rogers's K-9 interview, "the interviewers interrogated Plaintiff Rogers over his use of FMLA leave and they even asked [Mr. Rogers] why he took 'so much' FMLA leave when other officers do not")). It is not clear from the Complaints when exactly the alleged illegal conduct occurred—namely, when specifically, Mr. Rogers was denied the four promotions. Reading the allegations in the Complaints as a whole and in the light most favorable to Plaintiffs, the alleged illegal conduct could have occurred in 2018 or 2019. Since Plaintiffs filed their original complaint with claims for FMLA retaliation in the Cuyahoga Court of Common Pleas on October 12, 2020, it means that, without more information, it is plausible that Plaintiffs' FMLA retaliation claims are timely and not barred by the statute of limitations.

For the foregoing reasons, the Court holds that the Rogers' FMLA claims are not barred by the statute of limitations.

### 4. *Parallel Proceedings*

Finally, Defendants argue that the settlement between Beachwood and Mr. Rogers in the parallel state proceedings moot Plaintiffs' FMLA claims for back wages, benefits, and other damages. (R. 42, PageID# 801). But this argument fails because the parallel state proceedings and settlement concerned only issues related to Mr. Rogers's

termination following his incident with Jones on June 27, 2019 (*see* R. 42-1 (arbitration decision)), while Plaintiffs' instant FMLA claims are concerned with Defendants' alleged failure to promote Mr. Rogers in retaliation for taking FMLA leave. Therefore, on this record, it is not apparent that the parallel state proceedings and settlement bar Plaintiffs' FMLA claims.

### B. Disparate Treatment and Equal Protection (Counts 5–7)

Plaintiffs bring three claims for alleged racial discrimination: (i) disparate treatment in violation of Ohio Rev. Code § 4112.01(A) against Beachwood, (ii) aiding and abetting disparate treatment in violation of Ohio Rev. Code § 4112.02(J) against Horwitz, and (iii) violations of the Equal Protection Clause of the Fourteenth Amendment against Horwitz. (R. 33, PageID# 654–660 ¶¶ 201–253). The crux of these claims is that Horwitz and Beachwood discriminated against Mr. Rogers—allegedly because he is white—by placing him on administrative leave following the incident where Mr. Rogers shot Jones. (*Id.*, PageID# 659–660 ¶¶ 240, 247). The Court separately considers Plaintiffs' state and federal law claims.

#### 1. *Ohio Law: Disparate Treatment, Aiding and Abetting Disparate Treatment*

Ohio law prohibits employers from discriminating against any person "with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly with employment" because of that person's race. Ohio Rev. Code § 4112.02(A). The Ohio Supreme Court has held that the four-pronged test established in *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973) should guide courts as to whether a plaintiff has established a prima facie case of racial discrimination. *Chenevey v. Greater Cleveland Regional Transit Auth.*, 992 N.E.2d 461, 466 (Ohio Ct. App. 2013)

(*citing Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128 (Ohio 1981)). A prima facie case of racial discrimination under *McDonnell Douglas* "requires a plaintiff to establish as follows: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position lost or not gained; and (4) the position remained open or was filled by a person not of the protected class." *Id.* (*citing McDonell Douglas*, 411 U.S. at 802). Since Ohio Revised Code Chapter 4112 is Ohio's counterpart to Title VII of the Civil Rights Act, the Court can apply federal authority to cases involving alleged violations of Ohio Revised Code Chapter 4112. *Id.* n. 2 (*citing Oleksiak v. John Carroll Univ.*, 2005 WL 488381, at *4 (Ohio Ct. App. Mar. 3, 2005)).

The Court need only consider the "adverse employment action" element because it is dispositive of Plaintiffs' disparate treatment claim. An adverse employment action for the purposes of a discrimination claim is a "materially adverse change in the terms or conditions of employment because of the employer's actions." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (*quoting Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999)).

Here, Plaintiffs' disparate treatment claim is based on Horwitz's and Beachwood's decision to put Mr. Rogers on indefinite administrative leave beginning on June 28, 2019, following the incident where Mr. Rogers shot Jones. (R. 33, PageID# 658–659 ¶¶ 235–241; R. 25-3, PageID# 483). As Defendants point out—and Plaintiffs do not dispute—Mr. Rogers's administrative leave was paid. (R. 25-3, PageID# 483; R. 27, PageID# 528–529). The Sixth Circuit has consistently held that paid administrative leave is not an adverse employment action. *Dendinger v. Ohio*, 207 F. App'x 521, 527 (6th Cir.

2006) ("[The Sixth Circuit has] repeatedly held . . . that neither an internal investigation into suspected wrongdoing by an employee nor that employee's placement on paid administrative leave pending the outcome of such an investigation constitutes an adverse employment action." (*citing Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004))); *see also Spellman v. Ohio Dep't of Transp.*, 244 F. Supp. 3d 686, 702 (S.D. Ohio Mar. 22, 2017) ("Sixth Circuit case law suggests that . . . forced administrative leave with pay [is] not . . . [a] materially adverse employment action[]."). As a result, Plaintiffs have failed to plead a claim for disparate treatment under Ohio law.

Additionally, the Rogers' claim for aiding and abetting disparate treatment under Ohio law must also fail, since the underlying claim fails. *See Weinrauch v. Sherwin-Williams Co.*, 2019 WL 3007031, at *14 (N.D. Ohio July 10, 2019) ("Where a court finds that a defendant is entitled to summary judgment on the underlying claims of discrimination and retaliation, the court must also necessarily grant summary judgment on the claim of aiding and abetting those claims.").

For the foregoing reasons, the Court dismisses Plaintiffs' claims for disparate treatment and aiding and abetting disparate treatment.

### 2. *Federal Law: Equal Protection, Fourteenth Amendment*

Defendants argue that Plaintiffs' Equal Protection claim must fail as a matter of law because Hortwitz is entitled to qualified immunity. (R. 26, PageID# 500–501). A government official who is performing a discretionary function is entitled to qualified immunity from suit as long as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (*quoting Harlow*

*v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Painter v. Robertson*, 185 F.3d 567, 567 (6th

Cir. 1999). Whether the right was clearly established "must be undertaken in light of the

specific context of the case, not as a general broad proposition." *Saucier v. Katz*, 533 U.S.

194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). The relevant inquiry in determining

whether a right is clearly established is "whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted." *Id*. at 194–95.

The Court is aware of no precedent suggesting that there is a violation of an

officer's clearly established constitutional rights when that officer is placed on paid

administrative leave pending an internal investigation into the officer's possible

misconduct. In fact, and as mentioned earlier, the Sixth Circuit does not even consider

such paid administrative leave to constitute an adverse employment action for the

purposes of a disparate treatment analysis, so any argument suggesting that subjecting an

officer to paid leave is a violation of established constitutional rights is tenuous at best.

Plaintiffs do not contest Defendants' substantive qualified immunity arguments.

Instead, the Rogers argue that it is generally inappropriate for a district court to grant a

motion to dismiss—or in this case, a motion for judgment on the pleadings—on the basis

of qualified immunity and urges the Court to wait to decide the issue of qualified

immunity until after the completion of discovery. (R. 27, PageID# 529). On this issue, the

Sixth Circuit has held that, "[d]espite liberal notice pleading standards, this circuit

permits a reviewing court to dismiss under Fed. R. Civ. P. 12(b)(6) based on qualified

immunity." *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005). The Court may dismiss

Plaintiffs' complaint "only if it is clear that no violation of a clearly established

constitutional right could be found under any set of facts that could be proven consistent

with the allegations or pleadings." *Id*. In fact, one of the cases cited by Plaintiffs in support of their argument that the Court should wait to decide the issue of qualified immunity holds that while typically "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal," this is only a "general preference, not an absolute one." *Siefert v. Hamilton Cty.*, 951 F.3d 753, 761 (6th Cir. 2020) (internal quotation marks omitted). Even taking all of Plaintiffs' allegations as true, Plaintiffs do not "plausibly show[] a violation of [Mr. Rogers's] clearly established rights," so it is appropriate for the Court to decide the question of qualified immunity at this stage of the litigation. *Id*. at 762. Therefore, the Court holds that Horwitz is entitled to qualified immunity on Plaintiffs' Equal Protection claim.

For the foregoing reasons, the Court dismisses Plaintiffs' claim for violation of the Equal Protection Clause of the Fourteenth Amendment.

### C. Disability Discrimination (Counts 8–9)

Plaintiffs bring two separate claims for disability discrimination against Defendants Horwitz, Haba, and Beachwood: violation of the ADA and Ohio Rev. Code § 4112.01 due to these Defendants' failure to provide Mr. Rogers a reasonable accommodation for his disabilities. (R. 33, PageID# 661–663 ¶¶ 254–272).

As an initial matter, the Court considers whether the settlement between Beachwood and Mr. Rogers in the parallel state proceedings renders Plaintiffs' disability discrimination claims moot. Under Article III of the Constitution, federal courts "may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317–18 (1988) (*citing Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546 (1976); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). That a dispute between the parties "was very much alive

when the suit was filed . . . cannot substitute for the actual case or controversy that an exercise of [the] Court's jurisdiction requires." *Id.* (*citing Steffel v. Thompson*, 415 U.S. 452, 459, n.10 (1974)).

In their Complaint, Plaintiffs allege that Defendants' failure to provide Mr. Rogers a reasonable accommodation for his disability resulted in "economic and noneconomic damages," and that he is entitled to reinstatement of his position. (R. 33, PageID# 663 ¶ 271). However, the settlement between Beachwood and Mr. Rogers in the parallel state proceedings reinstates Mr. Rogers to his job and covers "compensation for any and all backpay and benefits that may be owed" to Mr. Rogers between the date he was terminated—February 22, 2021—and his reinstatement date. (R. 42-3, PageID# 849; R. 33, PageID# 628). On its face, therefore, the settlement appears to have provided Mr. Rogers with the remedies he now seeks via his disability discrimination claims.

Plaintiffs argue that their disability discrimination claims are not mooted because the arbitrator's decision only ordered Mr. Rogers backpay beginning from the date of his termination, *not* when his administrative leave began on June 28, 2019. (R. 43, PageID# 859–861; R. 25-3, PageID# 483). In other words, Plaintiffs assert that the arbitrator's decision and resultant settlement fail to cover Plaintiffs' claim for backpay between June 28, 2019, and February 22, 2021. However, Plaintiffs do not dispute that during this period, Mr. Rogers was on *paid* administrative leave, so he was not incurring economic damages even assuming that he was discriminatorily placed on leave due to his alleged disability. (R. 25-3, PageID# 483).

Since Beachwood has agreed to reinstate Mr. Rogers and settled with him for backpay due to him between his termination and reinstatement, Plaintiffs' disability

discrimination claims are moot.

Moreover, Plaintiffs' ADA claims fail for a separate and independent reason. As Defendants correctly point out, ADA claims "must be raised and filed by an employee to the [Equal Employment Opportunity Commission (EEOC)] before a plaintiff can bring a lawsuit in court. Under the ADA, a Plaintiff bringing a suit must first file a charge of discrimination with the EEOC within 300 days of the alleged discrimination and must obtain a right-to-sue letter from the EEOC to properly exhaust the administrative remedy. The exhaustion of this administrative remedy is a 'condition precedent' to an ADA claim, in that failure to do so is grounds for dismissal of the claim." *Parsons v. Buehler's Asphalt Paving, Inc.*, 2021 WL 2688528, at *2 (N.D. Ohio June 30, 2021) (internal citations omitted) (*quoting Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000); *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002); *Jones v. Nat. Essentials, Inc.*, 740 F. App'x 489, 494 (6th Cir. 2018)).

Plaintiffs do not allege that Mr. Rogers filed a charge with the EEOC before bringing the instant lawsuit, and Plaintiffs do not dispute as much in their opposition brief to Defendants' Amended Motion for Judgment on the Pleadings. Rather, the Rogers' only argument on this issue is that Defendants have waived their administrative exhaustion argument since they did not list it as an affirmative defense in their answers to the Complaints. (R. 27, PageID# 530). But "a defense is not necessarily waived if it is raised by motion, the plaintiff has the opportunity to respond, and no prejudice results." *Love v. United States*, 530 F. App'x 564, 565 (6th Cir. 2013) (per curiam) (*citing Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997)). Where a plaintiff had "ample opportunity to respond to the defense motion," the argument may not be waived. *Id*. Here, the Court holds that Defendants have not waived their administrative exhaustion

affirmative defense because the Rogers had plenty of time to address this argument as it was presented in Defendants' Amended Motion for Judgment on the Pleadings.

For the foregoing reasons, the Court dismisses Plaintiffs' disability discrimination claims.

### D. Occupational Liberty (Count 10)

Pursuant to 42 U.S.C. § 1983, Plaintiffs bring an occupational liberty claim against Defendant Pasch for allegedly violating Mr. Rogers's Fourteenth Amendment rights. (R. 33, PageID# 663–665 ¶¶ 273–283). Plaintiffs allege that Pasch made disparaging public comments about Mr. Rogers following Mr. Rogers's incident with Jones, and that as a result, Pasch "impugned Plaintiff Rogers's good name, honor and reputation" and caused Mr. Rogers to suffer loss of employment opportunities. (*Id.*, PageID# 664 ¶¶ 278–280).

The Fourteenth Amendment "forbids state actors from depriving individuals of life, liberty or property without due process of law." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002). "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Id.* (alteration in original) (*quoting Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989)). "[W]hen a 'nontenured employee shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.'" *Id.* at 320 (*quoting Chilingirian*, 882 F.2d at 205). "It is the denial of a name-clearing hearing that causes the deprivation of the liberty interest without due process." *Id.* (*citing Brown v. City of Niota*, 214 F.3d 718, 723 (6th Cir. 2000)).

The Sixth Circuit has held that a "plaintiff's failure to request a name-clearing

hearing was fatal to his liberty interest claim," and that a name-clearing hearing is "required only if the plaintiff requests one." *Quinn*, 293 F.3d at 321. The *Quinn* court held that before asserting his liberty interest claim, plaintiff was "required to show that he requested a name-clearing hearing and was denied that hearing." *Id.* (*citing Brown*, 214 F.3d at 723; *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410–11 (6th Cir. 1997)).

Nowhere in their Complaints do Plaintiffs allege that Mr. Rogers requested—let alone was denied—a name-clearing hearing regarding Pasch's public statements. Plaintiffs also do not address this pleading deficiency in their briefs on the Motions for Judgment on the Pleadings. As a result, the Plaintiffs' occupational liberty claim fails as a matter of law, and the Court dismisses this claim.

### E. Malicious Prosecution and Abuse of Process (Counts 11–14)

Plaintiffs allege four separate Ohio common law claims against Defendants Horwitz, Haba, Pasch, Calta, Supler, and Beachwood for Mr. Rogers's criminal prosecution for shooting Jones in 2019: (i) malicious prosecution, (ii) conspiracy to maliciously prosecute, (iii) abuse of process, and (iv) civil conspiracy to abuse process. (R. 33, PageID# 665–668 ¶¶ 284–315). The Court separately considers each claim.

#### 1. *Ohio Common Law Malicious Prosecution*

There are three elements of a malicious prosecution claim under Ohio law: (i) malice in commencing the prosecution, (ii) lack of probable cause, and (iii) favorable termination of the prosecution in favor of the accused. *See Brunswick v. City of Cincinnati*, 2011 WL 4482373, at *4 (S.D. Ohio Sept. 27, 2011) (*citing Criss v. Springfield Twp.*, 564 N.E.2d 440, 443 (Ohio 1990)). For the purposes of malicious

prosecution, "malice" means "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Twp.*, 564 N.E.2d 440, 443 (Ohio 1990); *see also Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005). Probable cause is defined as a "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Huber v. O'Neill*, 419 N.E.2d 10, 12 (Ohio 1981).

The thrust of Plaintiffs' argument in support of their malicious prosecution claim is that the "grand jury returned a no bill, meaning no probable cause existed." (R. 27, PageID# 534). However, the Rogers do not cite to any legal authority for this proposition, and it is belied by the fact that a "failure of the grand jury to indict does not preclude it or another grand jury from indicting at a later point in time." *State ex rel. Smith v. Ohio Adult Parole Auth.*, 1990 WL 74013, at *2 (Ohio Ct. App. June 5, 1990). While it is true that the Grand Jury's return of a no bill related to Mr. Rogers's shooting of Jones weighs in favor of finding a lack of probable cause, it is not determinative of such a conclusion. As a result, the Court turns to the allegations in the Complaints to determine whether Plaintiffs have plausibly alleged a lack of probable cause for the presentation of Mr. Rogers's case before the Grand Jury.

Even reading the Complaints in the light most favorable to Plaintiffs, the Rogers' malicious prosecution claim fails to plead a lack of probable cause. Crucially, in their Complaints, Plaintiffs admit that Mr. Rogers shot a "fleeing" suspect (R. 33, PageID# 641; *id.*, PageID# 642–643 ¶¶ 99–102), and that it was this specific conduct that prompted Defendants to advocate for Mr. Rogers's criminal prosecution (*id.*, PageID#

665 ¶ 287). As Defendants point out, there is "longstanding precedent" in the Sixth Circuit that it is "unreasonable for an officer to use deadly force against a suspect merely because he is fleeing" and that such force is "only reasonable if the fleeing suspect presents an imminent danger to the officer or others in the vicinity." *Lewis v. Charter Twp. of Flint*, 660 F. App'x 339, 346 (6th Cir. 2016). The fact that it is undisputed that Mr. Rogers shot a suspect fleeing in a motor vehicle in a public parking lot heavily counsels for a finding of probable cause for the presentation of Mr. Rogers's case to the Grand Jury. Even construing the allegations as pleading facts that Mr. Rogers shot Jones in self-defense, Defendants would still have had a "reasonable ground of suspicion" that Mr. Rogers had committed a criminal offense. Probable cause is not a certainty that a defendant committed a crime, and Plaintiffs' Complaints do not plead facts sufficient to show a lack of a reasonable ground of suspicion that Mr. Rogers committed a crime when he shot the fleeing Jones. As a result, Plaintiffs' claim for malicious prosecution fails as a matter of law.

For the foregoing reasons, the Court dismisses Plaintiffs' claim for malicious prosecution.

### 2. *Ohio Common Law Conspiracy to Maliciously Prosecute*

Under Ohio law, a plaintiff must establish four elements to successfully bring a claim of civil conspiracy: "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent of the conspiracy itself." *Advanced Coatings Int'l, Inc. v. Fla. Cirtech, Inc.*, 2012 WL 3067375, at *3 (N.D. Ohio July 27, 2012) (*quoting Cook v. Kudlacz*, 2012 WL 2520923, at *17 (Ohio Ct. App. June 28, 2012). A civil conspiracy claim "must be pled

with some degree of specificity, and vague or conclusory allegations that are unsupported by material facts will not be sufficient to state a claim." *Id*. at *4. Where the allegations of conspiracy are conclusory, such that they mention only that defendants acted in concert, without saying "how," "when," or "what specific actions were taken in concert," a plaintiff has not sufficiently pleaded conspiracy. *Id*.; *see also Avery v. City of Rossford*, 762 N.E.2d 388, 395 (Ohio Ct. App. 2001).

Plaintiffs' claim for conspiracy to maliciously prosecute primarily fails because of the Court's dismissal of the underlying malicious prosecution claim. *See Wilson v. Harvey*, 842 N.E.2d 83, 92 (Ohio Ct. App. 2005) (holding that where plaintiff has not "established an underlying unlawful act," a claim for civil conspiracy fails). Separately, Plaintiffs plead only conclusory and vague allegations related to their claim for civil conspiracy to maliciously prosecute. (*See, e.g.*, R. 33, PageID# 665 ¶ 288 ("Defendants . . . agreed, expressly or impliedly, to get Plaintiff Rogers before a grand jury"); *id*. ¶ 289 ("Defendants . . . agreed, expressly or impliedly, to get Plaintiff Rogers indicted.")). Since the Rogers plead no facts pertaining to the specifics of the alleged conspiracy, it fails as a matter of law on this separate ground.

For the foregoing reasons, the Court dismisses Plaintiffs' claim for conspiracy to maliciously prosecute.

### 3. *Ohio Common Law Abuse of Process*

To prevail on an abuse of process claim under Ohio law, a plaintiff must satisfy three elements: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted

from the wrongful use of process." *Read v. Fairview Park*, 764 N.E.2d 1079, 1081 (Ohio Ct. App. 2001) (*quoting Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 626 N.E.2d 115, 118 (Ohio 1994)). "[I]f one uses process properly, but with a malicious motive, there is no abuse of process . . . . The tortious character of the defendant's conduct consists of his attempts to employ a legitimate process for a legitimate purpose in an improper manner." *Sherwin-Williams Co. v. Motley Rice, LLC*, 2009 WL 10740987, at *3 (N.D. Ohio Sept. 3, 2009) (*quoting Kavlich v. Hildebrand*, 2009 WL 625725, at * 2 (Ohio Ct. App. Mar. 12, 2009)).

Plaintiffs do not plead any facts alleging that Defendants have done anything more than carry out the grand jury process. Even taking as true Plaintiffs' allegations that Defendants had bad intentions when initiating the presentation of Mr. Rogers's case to the Grand Jury, Plaintiffs have not alleged that Defendants did anything improper once the process began. (*See* R. 33, PageID# 665–668 ¶¶ 284–315). As a result, their claim fails as a matter of law.

For the foregoing reasons, the Court dismisses Plaintiffs' claim for abuse of process.

### 4. *Ohio Common Law Civil Conspiracy to Abuse Process*

Because the Court has concluded that Plaintiffs failed to state a claim for abuse of process, the related conspiracy claim is also dismissed for lack of an underlying unlawful act. *See Wilson*, 842 N.E. 2d at 92.

### F. Aiding and Abetting of Malicious Prosecution and Abuse of Process (Count 15)

Plaintiffs allege a claim for Ohio common law aiding and abetting of malicious

prosecution and abuse of process against Defendants Horwitz, Haba, Pasch, Calta, Supler, and Beachwood. (R. 33, PageID# 668–669 ¶¶ 316–322). However, such a civil aiding and abetting is not a viable claim under Ohio law. *Coley v. Lucas Cty.*, 2014 WL 273235, at *15 (N.D. Ohio Jan. 23, 2014) ("Without further direction from the Ohio Supreme Court, this Court cannot find civil aiding and abetting to be a viable claim under Ohio law." (*citing Pavlovich v. Nat'l City Bank*, 435 F.3d 560 (6th Cir. 2006); *Barney v. PNC Bank*, 714 F.3d 920, 929 (6th Cir. 2013))); *see also Mango v. City of Columbus*, 2020 WL 5247939, at *8 (S.D. Ohio Sept. 3, 2020) ("Ohio does not recognize a cause of action for tortious acts in concert." (*citing DeVries Dairy, LLC v. White Eagle Coop. Ass'n*, 974 N.E.2d 1194, 1194 (Ohio 2012))); *Thomas v. Murry*, 2021 WL 303822, at *15 (Ohio Ct. App. Jan. 28, 2021) ("[The Ohio Supreme Court] unambiguously concluded that the state of Ohio does not recognize a cause of action for aiding and abetting a tortious act."). As a result, the Court must dismiss Plaintiffs' claim for aiding and abetting of malicious prosecution and abuse of process.

### G. Intentional Infliction of Emotional Distress (Count 16)

Plaintiffs next allege a claim for intentional infliction of emotional distress (IIED) against all Defendants. (R. 33, PageID# 669–670 ¶¶ 323–329). Under Ohio law, the elements of an IIED claim are: "(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that

34

no reasonable person could be expected to endure it." *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 870 (N.D. Ohio 2013) (*citing Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.2d 1099, 1110 (6th Cir. 2008)). To say that Ohio courts "narrowly define 'extreme and outrageous' conduct would be something of an understatement." *Jeffery-Wolfert v. UC Health*, 2018 WL 2137693, at *3 (S.D. Ohio May 9, 2018). Conduct that is "merely malicious, aggravated, or intentional or that entails an intent that is tortious or criminal is insufficient to render it actionable" for IIED. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 545 (6th Cir. 2003) (*citing Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983)). Whether conduct "rises to the level of 'extreme and outrageous'" is a question of law. *Meminger v. Ohio State Univ.*, 102 N.E.3d 642, 646 (Ohio Ct. App. 2017) (*quoting Jones v. Wheelersburg Local School Dist.*, 2013 WL 4647645, at *8 (Ohio Ct. App. Aug. 19, 2013)).

Plaintiffs have not specified in the section of their Complaints alleging IIED Defendants' specific wrongful conduct constituting this claim, so the Court considers Plaintiffs' general factual allegations. Throughout their Complaints, Plaintiffs assert the following wrongful conduct against Defendants: (i) making disparaging remarks about Mr. Rogers (R. 33, PageID# 633–641, 645–646 ¶¶ 28–94, 135–139; (ii) discriminating against Mr. Rogers on the basis of his race or disability (*id.*, PageID# 641–645 ¶¶ 95–134); and (iii) pushing for the prosecution of Mr. Rogers for admittedly shooting Jones (R. 33, PageID# 646–648 ¶¶ 140–160).

Even taking all of Plaintiffs' pleaded facts as true, they do not constitute the outrageous and extreme conduct required to sustain a claim for IIED under Ohio law. Cases where plaintiffs have alleged far more reprehensible conduct have been dismissed

by Ohio courts on grounds of insufficiently outrageous or extreme conduct. For example, where a plaintiff alleged that defendants "falsely imprisoned Plaintiff for four hours without food or water while [defendants] interrogated, intimidated, harassed, and embarrassed [plaintiff]," the court held that an IIED claim was not viable. *See Wolfe v. Thermo Fisher Sci., Inc.*, 2009 WL 1255023, at *2–3 (S.D. Ohio May 4, 2009).

There are also numerous cases with similar allegations as the Rogers' whose IIED claims were dismissed for failure to plead outrageous or extreme conduct. In *Evans v. Iceman*, 2022 WL 2954226, at *1–3 (S.D. Ohio July 26, 2022), the plaintiff public school employee alleged that the defendant employer remarked that the plaintiff made a comment that "constituted racism and bigotry," forced the plaintiff to resign from his job, and reported the plaintiff to the Ohio Department of Education's Office of Professional Conduct, meaning that the plaintiff could not obtain future employment in Ohio public school districts. In dismissing the IIED claim, the *Evans* court held that "[c]ruel, rude, or harassing comments from an employer to an employee are not considered outrageous and extreme." *Id*. at *3; *see also Hill v. Vill. of W. Lafayette*, 1996 WL 487943, at *5 (Ohio Ct. App. May 24, 1996) (holding that allegations of a defendant employer's "continuing pattern of harassment," including 'false disciplinary charges brought against" plaintiff employee and "allegedly defamatory conduct" was not "so severe as to constitute 'extreme and outrageous' conduct"). As a result, the Court holds that Plaintiffs' allegations that Defendant Haba called Mr. Rogers a "snowflake" or that Defendant Pasch made public comments regarding the Jones incident do not support an IIED claim under Ohio law.

The Court similarly holds that Plaintiffs' allegations of Defendants'

36

discrimination against Mr. Rogers do not constitute a viable claim for IIED. Under Ohio law, "an adverse employment action, even if based upon discrimination, does not amount to extreme and outrageous conduct without proof of something more." *Benge v. Gen. Motors Corp.*, 267 F. Supp. 2d 794, 805 (S.D. Ohio Mar. 31, 2003) (*quoting Black v. Columbus Pub. Schools*, 124 F. Supp. 2d 550, 588 (S.D. Ohio 2000)); *see also Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) ("[A]n employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more.").

Finally, the Court is aware of no authority to support the proposition that allegations of malicious prosecution adequately support an IIED claim. Here, Plaintiffs' allegations are especially weak, as it can hardly be persuasively argued that where Mr. Rogers admits that he shot Jones that the subsequent presentation of his case to the Grand Jury constitutes extreme or outrageous conduct on the part of Defendants. Therefore, the Court holds that Plaintiffs' malicious prosecution allegations fail to constitute a proper IIED claim.

Even if the Court were to find sufficient allegations of extreme or outrageous conduct, Plaintiffs' IIED claim would also fail because the Rogers fail to plead "serious emotional distress." "Serious emotional distress may be found where a reasonable person would be unable to cope adequately with the mental distress engendered by the circumstances of the incident." *Jeffery-Wolfert*, 2018 WL 2137693, at *4. "[W]here the plaintiff fails to show that she sought medical or psychiatric help[,] . . . she must show that she was unable to function in daily life." *Id*.

Plaintiffs have made no allegations that Mr. Rogers sought medical or psychiatric

treatment related to emotional distress that he suffered at the hands of Defendants. Even

though Plaintiffs allege that Mr. Rogers suffers from PTSD, they claim that it was "a

result of the June 27, 2019 incident with Jaquan Jones," not due to Defendants' conduct.

(R. 33, PageID# 643 ¶ 118). Plaintiffs have also not alleged that Mr. Rogers is unable to

function in daily life as a result of any emotional distress he suffered from Defendants'

actions. As a result, Plaintiff's IIED claim fails for the separate and independent reason

that Plaintiffs have not pleaded serious emotional distress.

For the foregoing reasons, the Court dismisses Plaintiffs' IIED claim.

### H. Civil Action for Damages for Criminal Act (Counts 17–19)

Plaintiffs bring two separate claims for civil action for damages for a criminal act

pursuant to Ohio Rev. Code § 2307.60 against Defendants Calta and Beachwood. (R. 33,

PageID# 670–671 ¶¶ 330–339). Ohio law provides, "Anyone injured in person or

property by a criminal act has, and may recover full damages in, a civil action unless

specifically excepted by law . . . ." Ohio Rev. Code § 2307.60(A)(1). Plaintiffs' claims

are related to Calta's and Beachwood's alleged violation of two different criminal

statutes: (i) the Ohio Privacy Act and (ii) the Federal Privacy Act.[2]

The relevant provision of the Ohio Privacy Act criminal statute mandates that

"[n]o officer or employee of a law enforcement agency or court . . . shall disclose during

the pendency of any criminal case the home address of any peace officer . . . who is a

---

[2] The section heading of Plaintiffs' Complaints for "Civil Action for Damages for Criminal Act"
appears to assert three separate claims, noting that these claims constitute "Counts 17–19" of the
Complaints. (*See* R. 33, PageID# 670). However, Plaintiffs' substantive allegations only make
two such claims—one related to the underlying violations of the Ohio Privacy Act and one for
the violation of the Federal Privacy Act. As a result, the Court construes Plaintiffs' Complaints
as alleging only two claims related to the civil action for damages for a criminal act, not three.

witness or arresting officer in the case." Ohio Rev. Code § 2921.24(A). Plaintiffs allege

that Calta violated this statute by publicly disclosing "Plaintiff Rogers's home address

and phone number to the Cleveland Jewish News" during the "pendency of Jaquan

Jones's criminal case," and that Mr. Rogers was a witness in Jones's criminal trial. (R.

33, PageID# 671 ¶¶ 333–335). Accordingly, Plaintiffs claim that Calta and Beachwood

are civilly liable pursuant to Ohio Rev. Code § 2307.60.

 As mentioned above, to maintain a cause of action pursuant to Ohio Rev. Code §

2307.60, the plaintiff must be "injured in person or property." Here, Plaintiffs assert mere

legal conclusions as to their damages related to the alleged disclosure of their address and

phone number, and their allegations lack a sufficient factual basis to demonstrate a

plausible claim of injury to their person or property under the Ohio statute. (*See* R. 33,

PageID# 671 ¶ 338 ("As a direct and proximate result of the foregoing, Plaintiff Rogers

has suffered and will continue to suffer economic and noneconomic damages in excess of

$75,000.")). This is so according to *Iqbal* and *Twombly* because a plaintiff must plead

more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556

U.S. at 677–78 (*citing Twombly*, 550 U.S. at 555). Accordingly, Plaintiffs' claim for civil

action for damages for a criminal act in violation of the Ohio Privacy Act is dismissed.

The Court need not address Defendants' immunity defense with respect to this claim. (R.

23-1, PageID# 384–387).

 In addition to failing for the same reason as their previous claim, Plaintiffs' claim

for civil action for damages for a criminal act in violation of the Federal Privacy Act falls

short for another reason. Although the section heading of the Rogers's Complaints

appears to signal that Plaintiffs allege this claim (R. 33, PageID# 670), Plaintiffs do not

actually plead a violation of the Federal Privacy Act in their Complaints, as they do not specify the provision or provisions of the statute, if any, that Defendants allegedly violated, or any facts pertaining to a violation of this statute. Therefore, no violation of the Federal Privacy Act is supported and such claim is dismissed.

### I. Loss of Consortium (Count 20)

Plaintiffs next bring a claim for Ohio common law loss of consortium against all Defendants. (R. 33, PageID# 672 ¶¶ 340–342). A claim for loss of consortium "must be predicated on a tort involving a bodily injury." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007) (emphasis removed); *see also id*. at 790–91 ("[A] claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers *bodily injury*." (emphasis in original) (*quoting Bowen v. Kil-Kare, Inc.*, 585 N.E.2d 384, 392 (Ohio 1992))).

The Rogers do not allege that Defendants have committed a tort that caused Mr. Rogers bodily injury. In Plaintiffs' opposition brief, they argue that Mr. Rogers's PTSD is a bodily injury for the purposes of this claim. (R. 27, PageID# 537–538). But in their Complaints, Plaintiffs allege that Mr. Rogers "suffers from PTSD as a result of the June 27, 2019 incident with Jaquan Jones." (R. 33, PageID# 643 ¶ 118). The Rogers do not allege that Mr. Rogers suffers from PTSD because of any of *Defendants'* actions.

Therefore, the Court dismisses Plaintiffs' loss of consortium claim.

### J. Retaliatory Discharge (Count 21)

Finally, Plaintiffs bring a claim for retaliatory discharge in violation of Ohio Rev. Code § 4112.01(I) against Defendants Horwitz and Beachwood. (*Id*., PageID# 672–674

40

¶¶ 343–355). The Rogers' retaliatory discharge claim asserts that Horwitz and Beachwood terminated Mr. Rogers's employment with the BPD because Plaintiffs filed the instant lawsuit alleging claims for Defendants' discrimination against Mr. Rogers. (*Id.* ¶¶ 345–355).

In their Motion for Judgment on the Pleadings as to the Second Amended Complaint, Defendants argue that this claim should be dismissed for four reasons: (i) the Court lacks jurisdiction to consider the claim because it is subject to arbitration under the CBA; (ii) Plaintiffs fail to satisfy the requirements of the *McDonnell Douglas* framework in their pleadings; (iii) Plaintiffs never satisfied the statutory prerequisites before filing a retaliatory discharge claim; and (iv) Horwitz is entitled to statutory immunity under Ohio Rev. Code § 4112. (R. 35, PageID# 715–721). But before considering any of these arguments, the Court must first determine whether Mr. Rogers's settlement with Beachwood in the parallel state proceedings have mooted his retaliatory discharge claim.

As explained above regarding Plaintiffs' disability discrimination claims, the Court "may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317–18 (1988) (*citing Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546 (1976); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). Here, Plaintiffs seek "economic and noneconomic damages" related to Mr. Rogers's alleged retaliatory discharge. (R. 33, PageID# 674 ¶ 355). Again, though, in their settlement in the parallel state proceedings, Mr. Rogers and Beachwood agreed to his reinstatement, as well as an award of $230,000 as compensation for "any and all backpay and benefits" owed to Mr. Rogers. (R. 42-3, PageID# 849). Plaintiffs argue that this settlement does not moot their retaliatory discharge claim because the arbitrator only ordered Beachwood to compensate Mr. Rogers in backpay for

"what light or limited duty [that he] would have been entitled to" had he not been terminated, not what Mr. Rogers would have earned if he had been on full active duty. (R. 43, PageID# 864; R. 42-1, PageID# 828).

Plaintiffs' argument is unpersuasive. The arbitrator decided that Beachwood was to determine "what light or limited duty [Mr. Rogers] would have been entitled to, *if any*, had the termination not been issued," which would determine Mr. Rogers's compensation for his period of termination. (R. 42-1, PageID# 828 (emphasis added)). Since the parties agreed in their settlement that the "compensation paid to [Mr.] Rogers shall constitute full and complete satisfaction of the judgment entered in the Cuyahoga County Court of Common Pleas . . . that confirmed the Arbitrator's Award," the $230,000 covers the backpay award from the arbitration. (R. 42-3, PageID# 851). That is, although the settlement does not specify whether the monetary award compensates Mr. Rogers for light or full duty, the parties apparently agreed to the amount that compensates Mr. Rogers for the backpay that he would have received had he not been terminated, consistent with the arbitrator's award. Since Mr. Rogers has been reinstated and received backpay to compensate him for his period of termination from the very Defendants against whom he brings his retaliatory discharge claim—Beachwood and the mayor—Plaintiffs' retaliatory discharge claim is moot.

For the foregoing reasons, the Court dismisses Plaintiffs' retaliatory discharge claim, and need not consider Defendants' alternative arguments for dismissal of this claim.

### V. Conclusion

Defendants' Amended Motion for Judgment on the Pleadings (R. 23) and Conforming

Motion for Judgment on the Pleadings (R. 26) as to the First Amended Complaint are hereby GRANTED IN PART and DENIED IN PART. Defendants' Motion for Judgment on the Pleadings as to the Second Amended Complaint (R. 35) is hereby GRANTED.

Consequently, all of Plaintiffs' claims are dismissed with the limited exception of the FMLA retaliation claims as explained *supra*.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States District Judge

Date: September 29, 2023